## SCHNAUFER v. PRICE et al.

### No. 5330.

Court of Civil Appeals of Texas. Texarkana.

Feb. 2, 1939.

Rehearing Denied Feb. 9, 1939.

J. S. Simkins, of Corsicana, and Gray & Pope, of Tyler, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, Lasseter, Simpson, Spruiell & Lowry, of Tyler, and Brachfield & Wolfe, of Henderson, for appellees.

WILLIAMS, Justice.

In this action based upon false arrest and imprisonment, appellant, G. A. Schnaufer, plaintiff below, sought damages, actual and exemplary, of Earl Price, Sheriff of Smith County, Standard Accident Insurance Company, surety on his official bond, Peoples National Bank of Tyler, Sam Greer, First National Bank of Henderson, and E. F. Crim, jointly and severally. At the conclusion of the evidence offered by plaintiff, the court·instructed the jury to return a verdict in favor of Greer, Crim, and the two banks. Trial proceeded as to the other defendants and resulted in a $100 judgment for actual damages.

During the East Texas oil boom spurious Rock Island & Pacific Railroad bonds had been pledged as security for the payment of promissory notes executed in the names of Hall and Evans and loans thus obtained. These transactions resulted in felony indictments being returned for swindling against them. Warrants for their arrest were in the hands of the Sheriff's Department of Smith County. Months later Bell, an official of the Citizens National Bank of Tyler, notified the county attorney's office that a man in possession of similar bonds was then in the bank. This information caused Crooks, a deputy sheriff, and Nat Gentry, the county attorney, to trail this man into the lobby of a local hotel. He was in possession of similar bonds to those involved in the indictment. He gave his name as L. S. Ryan. When he entered the hotel he met appellant and the two seated themselves and entered into conversation. They were so engaged when accosted and required by the officials to go to the court house. Ryan was arrested under the belief that he was C. E. Evans, named in the indictment and warrant of arrest. Plaintiff was arrested at the same time under the belief that he was Miller E. Hall, the person named in the other indictment and warrant of arrest. From around 9:30 A. M. when first arrested until near 5 P. M. when they were placed in jail, the county attorney conducted an investigation to ascertain the identity of the two. Both denied that they were either of the men wanted, and denied any knowledge of or connection with crimes charged in the indictments. Their fingerprints and handwriting were obtained. The handwriting was compared with the signatures on the notes. The county attorney concluded from this comparison that Ryan had signed the Evans notes and plaintiff the Hall note. The county attorney, who had taken the lead from the beginning, advised the sheriff's department to hold both men until he could secure an opinion from a handwriting expert. This opinion received six days later stated that the Ryan-Evans handwriting was the same, but that the handwriting of plaintiff was not that of Hall on the note. Plaintiff was immediately released. Ryan made bond. A year later both indictments were nolle prossed.

Appellant in explanation of his presence with Ryan at the hotel testified that he and Ryan had been acquaintances for years, and that Ryan on the morning of the arrest was preparing to make an automobile trip to Rusk County on a business deal in which both were interested. He further testified about his residence and occupations in various places in Texas and Arizona, and of his residence for more than two years in Tyler. Plaintiff asserts that he could have made bond but the sheriff would not permit him to do so, unless he signed same "Miller E. Hall" as principal. This he refused to do. He was permitted to contact a lawyer of his choice before being put in jail. Another attorney and other acquaintances visited him during his incarceration. Several bonds prepared and delivered by the sheriff to callers were never executed and returned.

The jury found plaintiff's arrest to have been made upon probable cause, and further found that plaintiff was not detained longer than was reasonably necessary to ascertain his identity. These findings are not attacked. No issue was submitted or requested as to exemplary damages. Under such findings and the evidence plaintiff is entitled to recover actual damages for this trespass. Upon this issue the jury was instructed to take into consideration plaintiff's claim for humiliation, physical suffering, mental anguish, loss of time, and impairment of his reputation and health. Plaintiff contends that the $100 actual damages found by the jury was so wholly inadequate to compensate him that it was the legal duty of·the trial court to set aside this award of $100 and to grant a new trial. Naturally, the evidence offered by plaintiff and defendants conflicted. The jury heard this evidence pro and con and the circumstances surrounding the arrest and detention of plaintiff. The jury being the judge of the facts

proven, the credibility of the witnesses and of the weight to be given their testimony, it was within their exclusive province to assess the amount of damages. The award appears to be very conservative. Another jury viewing the same evidence might have awarded a larger sum. In the absence of any showing that this award by the jury was the result of bias, prejudice, or other improper motive, we do not feel justified in holding as a matter of law that the jury abused their discretion.

■ Over objections of plaintiff, defendant Price introduced in evidence two notes theretofore executed in the name of Evans and one executed in the name of Hall, together with the spurious bonds pledged to secure their payments; the indictments predicated upon the foregoing transactions; and the bonds found in possession of Ryan at the time of his arrest. Sheriff Price on cross-examination was permitted to testify over plaintiff's objections that prior to the time these men were locked up in jail the county attorney informed him that he had compared their handwriting and Evans' signature on two of the notes was that of Ryan; but he was not so certain that appellant had signed the name of Hall on the other note; that he was forwarding all his handwriting to an expert; and instructed him to hold the men until such opinion should be received. The honest mistake of an officer in arresting the wrong person may be considered in mitigation of damages and on the question of malice. Appellant was arrested and detained under the belief that he was a confederate of Ryan and that they were the two charged in the indictment. This evidence was admissible upon this phase of the action. Formwalt v. Hylton, 66 Tex. 288, 1 S.W. 376; Hays v. Creary, 60 Tex. 445; S. H. Kress & Co. v. Lawrence, Tex.Civ.App., 162 S.W. 448, writ refused. The introduction in evidence of the opinion of the handwriting expert to the effect that plaintiff did not sign the note in the name of Hall was beneficial rather than prejudicial to plaintiff's rights.

■ The only evidence introduced by appellant in regard to any connection of Greer and Crim with his arrest by the deputy sheriff was testified to by appellant. As to Crim he stated: "And Mr. Gentry called out, 'The next identification will be made by Mr. E. F. Crim, President of the First National Bank of Henderson, Texas,' so Mr. Crim he steps out in front of me and he stood and looked around there at me and he said, 'I know this man well,' he said, 'My chauffeur hauled him too— brought him into my bank and sold me— he sold me Rock Island—these Rock Island bonds, his name is Miller E. Hall, and my chauffeur taken him to other places to sell other people bonds. I positively identify him as being Miller E. Hall.'"

According to appellant's testimony, Greer's identification of him as Hall and as the same man who had theretofore unloaded on Greer spurious Rock Island bonds was positive. And he gave the time as the middle of the afternoon when Crim, Greer, and a taxi-driver out of Rusk County all identified him as Miller E. Hall. These men had been arrested in the morning. They innocently and in good faith identified appellant as the man who had theretofore dealt with them. In this, as events later developed, they were honestly mistaken. As stated in Miller v. Fano, 134 Cal. 103, 66 P. 183, 184, and applicable to the facts here: "It is the duty of every citizen, when called upon, to give all information in his possession to the proper officers of the law as to persons connected with crimes. No doubt, if a person should willfully identify the wrong man as being the criminal, for the purpose of having him arrested and prosecuted, and on such identification he should be arrested, such person would aid and assist in the arrest. But it would be a hard and unjust law that would hold a party responsible in damages for false imprisonment for an honest mistake as to the identity of a party."

This evidence fails to show that Crim, Greer, or any other official of either defendant bank, induced, requested or directed the deputy sheriff to make the arrest, and in this plaintiff failed to establish a cause of action against the defendants Greer, Crim, and defendant banks. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Miller v. Fano, supra; Hamilton v. California Co., Tex.Civ.App., 103 S.W.2d 200; Knight v. International & G. N. R. Co., 5 Cir., 61 F. 87; Farnam v. Feeley, 56 N.Y. 451; Meyer v. Monnig Dry Goods Co., Tex. Civ.App., 189 S.W. 80, writ refused; El Paso Electric R. Co. v. Crews, Tex.Civ. App., 277 S.W. 732, writ dismissed; 19 Tex.Jur. p. 572. The other propositions presented have been examined and are respectfully overruled.

The judgment is affirmed.