**WAL–MART STORES, INC., Petitioner,**

v.

**Martin RODRIGUEZ, Respondent.**

No. 01–0643.

Supreme Court of Texas.

Argued April 16, 2002.

Decided Oct. 10, 2002.

Kevin D. Jewell, Magenheim Bateman & Helfand, P.L.L.C., Houston, Robert Joseph Perez, Shelton & Valadez, San Antonio, Douglas W. Alexander, Scott Douglass & McConnico, Austin, for Petitioner.

A.J. Hohman, Jr., John G. Gehring, Hohman Georges & Gehring L.L.P., San Antonio, for Respondent.

Justice ENOCH delivered the opinion of the Court.

We must decide whether Wal–Mart Stores, Inc. may be liable for false imprisonment because of its failure to disclose to the district attorney that its check identification system could provide inaccurate information, resulting in the arrest of innocent persons. The trial court said no. But the court of appeals said yes, and reversed the trial court's summary judgment for Wal–Mart.[1] We hold that Wal–Mart cannot be held liable for false impris-

onment because there is no evidence that it knowingly provided the district attorney with false information intending that Martin Rodriguez be arrested. We reverse the court of appeals' judgment in part and render judgment for Wal–Mart.

## I

On February 13, 1999, Rodriguez was spending his Saturday at a Hays County public park when a police officer passing by asked to see his identification. Rodriguez produced his driver's license. The officer found that a warrant had been issued for his arrest on a charge of theft by check. Rodriguez was handcuffed and taken to the Hays County jail, where he remained from Saturday afternoon until he made bail Sunday evening. The next day Rodriguez spoke with an assistant district attorney, who learned the following facts after a short investigation.

While Rodriguez was employed by R & C Enterprises, a company owned by Rex Long, he purchased supplies for R & C at the local Wal–Mart, paying by company check. Because Rodriguez was the first employee to present an R & C check there, Wal–Mart's register prompted the cashier to request personal identification. Rodriguez offered his driver's license, and the cashier entered his license number into Wal–Mart's check identification system. Under that system, any R & C check presented thereafter would be approved without a prompt for further identification, and Wal–Mart's register would automatically print Rodriguez's driver's license number on the back of the presented R & C check. Store policy further required the cashiers to request identification if the check appeared defective in some respect, if they had a question about the check, the signature, or the amount of the check, and

1. 52 S.W.3d 814, 819–20.

to print the drawer's name under the signature if the signature was illegible.

In July 1998, after Rodriguez had left the company's employ, Long purchased goods at the same Wal–Mart with an R & C check for $197.83. Long signed the check illegibly, but his name was not printed under the illegible signature as required by store policy. Although the check contained R & C's address and business phone number, its only legible personal identification was Rodriguez's license number, which Wal–Mart's register automatically imprinted on the check's back.

Long's R & C check, bearing his illegible signature, was returned for insufficient funds. Following the store's usual procedure, Wal–Mart employees called the phone number printed on the check and sent three letters to the address it listed for R & C. The third letter, sent certified mail, was returned as undeliverable. An employee then filled out a preprinted hot check complaint form and delivered that form and the returned check to the Hays County District Attorney's Office in September 1998. The complaint listed "R & C Enterprises" as the check's "maker," and Rodriguez's driver's license number was written in the space provided for the "maker's" number. The complaint was signed by J. Widener, a former Wal–Mart assistant manager. Above his signature, the form stated: "I understand that if charges are filed a warrant will be issued for the Maker who may be placed in jail." Wal–Mart had nothing further to do with processing its complaint or filing the criminal charge.

Shortly after Rodriguez's visit with the assistant district attorney, the charges against him were dismissed. He then sued Wal–Mart for malicious prosecution, false imprisonment, negligence and gross negligence, libel, invasion of privacy, and later added an unfair debt collection claim. Wal–Mart filed a motion requesting summary judgment under both traditional and no evidence standards. The trial court granted Wal–Mart summary judgment on all of Rodriguez's claims except unfair debt collection, which Rodriguez subsequently nonsuited. The court of appeals affirmed the trial court's summary judgment on all but the false imprisonment claim.[2] And the only claim now before us is the false imprisonment claim.

## II

"The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law."[3] Wal–Mart contends that there was no evidence that Wal–Mart willfully detained Rodriguez. In reviewing a no-evidence summary judgment, we examine the record in the light most favorable to the nonmovant, looking to see if Rodriguez presented more than a scintilla of evidence raising a genuine issue of material fact on the element of willful detention.[4] The court of appeals noted that, in the complaint delivered to the district attorney, Wal–Mart failed to disclose that it "knew that its check identification system could provide an erroneous driver's license number in relation to a company check."[5] Failure to disclose this possibility, accord-

---

**2.** *Id.* at 817–18.

**3.** *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985).

**4.** Tex.R. Civ. P. 166a(i) & cmt.; *see also Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000) (citing *Flameout Design & Fabrication,*

*Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.)); *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 796 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

**5.** 52 S.W.3d at 819.

ing to the court of appeals, raised a fact issue about whether Wal–Mart could be liable for Rodriguez's alleged false imprisonment.[6] We disagree.

### III

■ No Wal–Mart employee participated in Rodriguez's arrest and detention. Wal–Mart's only connection to the imprisonment was delivering the returned check and complaint to the district attorney's office. But in Texas, as both parties concede, liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention.[7] False imprisonment's first element may thus be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention.[8] We have sometimes referred to this causation standard as "instigat[ion]" of the false imprisonment.[9]

■ When the alleged detention results from an unlawful arrest, to prove instigation a plaintiff must show that the defendant clearly directed or requested the arrest.[10] As the *Restatement* explains, "[i]n the case of an arrest, [instigation] is the equivalent, in words or conduct, of 'Officer, arrest that man!' "[11] To hold a third party liable for instigating the detention, then, "the act of arrest [must be] made by the officer, not of his or her own volition, but to carry out the request of the defendant."[12]

■ A private citizen who merely reports a crime and identifies the suspect to law enforcement authorities has not requested or directed the suspect's arrest, and will not be liable for instigating a subsequent false imprisonment.[13] A citizen has a clear legal right to report criminal misconduct to authorities, and "from the mere exercise of this right the law will not permit the inference to be drawn that he 'requested or directed' the arrest, though it be conceded that but for its exercise the arrest would never have been made."[14] This is true even when the reporting party mistakenly identifies the wrong person.[15] Further, "[i]t is not enough for instigation that the actor has given information to the police about the

---

6. *Id.* at 819–20.

7. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059, 1063 (1898); *see also Sparkman v. Peoples Nat'l Bank of Tyler,* 501 S.W.2d 739, 744 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.); *J.C. Penney Co. v. Reynolds,* 329 S.W.2d 104, 106 (Tex.Civ.App.-El Paso 1959, writ ref'd n.r.e.).

8. *See, e.g., Joske,* 44 S.W. at 1063; Restatement (Second) of Torts § 35 (1965).

9. *See Tex. Midland R.R. v. Dean,* 98 Tex. 517, 85 S.W. 1135, 1137 (1905); *Regan v. Jessup,* 34 Tex.Civ.App. 74, 77 S.W. 972, 973 (1903).

10. *See Joske,* 44 S.W. at 1063; Restatement (Second) of Torts § 45A cmt. c.

11. Restatement (Second) of Torts § 45A cmt. c.

12. 32 Am Jur.2d *False Imprisonment* § 41 (1995).

13. *See Dean,* 85 S.W. at 1137; *Joske,* 44 S.W. at 1063; *Smith v. Sneed,* 938 S.W.2d 181, 186 (Tex.App.-Austin 1997, no pet.); *Schnaufer v. Price,* 124 S.W.2d 940, 942 (Tex.Civ.App.-Texarkana 1939, writ ref'd); *Halbert v. City of Sherman,* 33 F.3d 526, 528 (5th Cir.1994); *Armstead v. Escobedo,* 488 F.2d 509, 511 (5th Cir.1974).

14. *Joske,* 44 S.W. at 1063.

15. *See Schnaufer,* 124 S.W.2d at 942; *Sneed,* 938 S.W.2d at 186; *Halbert,* 33 F.3d at 528; *Armstead,* 488 F.2d at 511; *see also* Restatement (Second) of Torts § 45A cmt. c; 32 Am. Jur.2d *False Imprisonment* § 41; Fowler V. Harper, et al., The Law of Torts § 4.11, at 4:121 (3d ed. 1996).

commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." [16]

■ The complaint form that Wal–Mart filled out alleged the commission of a crime and provided information that the district attorney's office could use to identify the suspect. By signing the complaint, Wal–Mart certified that it knew the information provided could lead to an arrest. But the form contained no explicit request or direction to have any particular person arrested. Ordinarily then, Wal–Mart's act of filing this complaint would not, by itself, make it liable for Rodriguez's subsequent detention.[17]

But Rodriguez asserts, and the court of appeals held,[18] that a party providing information to legal authorities may nevertheless be liable for false imprisonment when it fails to disclose potentially exculpatory facts in its report. Rodriguez argues that a person who supplies incomplete information renders the authorities' reasonable exercise of discretion impossible, so that the law may justly charge that person with directing the false imprisonment no matter who actually made the decision to arrest. Thus, according to

Rodriguez, Wal–Mart can be liable for his alleged false imprisonment because it failed to inform the district attorney that it "knew that its check identification system could provide an erroneous driver's license number in relation to a company check." [19]

■ Rodriguez asserts that in most jurisdictions a party providing incomplete information to law enforcement authorities will be liable for instigating a subsequent false imprisonment. But his description of the weight of authority is somewhat misleading. While at least one other state supreme court has suggested that incomplete disclosure to authorities can make a third party liable for instigating an arrest,[20] many more have held that a third party must intentionally provide false information in order to satisfy false imprisonment's causation requirement.[21] "[W]hile the mere giving of inaccurate information is not a basis for liability, a private citizen who *knowingly* conveys false information to the police may be held liable for a subsequent false arrest." [22]

■ In *Schnaufer v. Price*, we held that, while a simple mistake in identification would not make a reporting party liable, "if a person should willfully identify the wrong man as being the criminal, for the purpose of having him arrested," [23]

16. RESTATEMENT (SECOND) OF TORTS § 45A cmt. c.

17. *See Dean*, 85 S.W. at 1137; *see also Sparkman*, 501 S.W.2d at 744; *Reynolds*, 329 S.W.2d at 106.

18. 52 S.W.3d at 819.

19. *Id.*

20. *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 327 N.W.2d 893, 904 (1982).

21. *See, e.g., Miller v. Fano*, 134 Cal. 103, 66 P. 183, 184 (1901); *Montgomery Ward v. Wilson*, 339 Md. 701, 664 A.2d 916, 927 (1995); *Go-*

dines v. First Guar. Sav. & Loan Ass'n, 525 So.2d 1321, 1325 (Miss.1988); *Jensen v. Barnett*, 178 Neb. 429, 134 N.W.2d 53, 55 (1965); *Earl v. Winne*, 14 N.J. 119, 101 A.2d 535, 543 (1953); *Wishnatsky v. Bergquist*, 550 N.W.2d 394, 398 (N.D.1996); *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242, 1248 (1977); *see also Vessels v. District of Columbia*, 531 A.2d 1016, 1020 (D.C.1987); *Sarvis v. Boston Safe Deposit & Trust Co.*, 47 Mass.App.Ct. 86, 711 N.E.2d 911, 921 (1999).

22. 32 AM.JUR.2D *False Imprisonment* § 41 (emphasis added); *see also* HARPER, THE LAW OF TORTS § 4.11, at 4:121–22.

23. *Schnaufer*, 124 S.W.2d at 942 (quoting *Miller*, 66 P. at 184).

that person could be liable for false imprisonment. This language is consistent with the prevailing majority rule that a third party will not be liable for instigating a false imprisonment unless the third party knowingly provides false information resulting in the arrest.[24]

 We have established a similar rule in the malicious prosecution context. In *Browning–Ferris Industries, Inc. v. Lieck*, we held that a defendant satisfies malicious prosecution's causation requirement when he "procures" the criminal proceedings at issue.[25] The *Restatement's* comment on procurement, quoted approvingly in *Lieck*,[26] reveals the similarity between the causation standards of "procuring" a criminal proceeding and "instigating" an arrest. For a defendant to procure proceedings, "it must ... appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution...."[27] Thus, much like instigation of a false imprisonment, procurement of criminal proceedings requires a direction or request for the action taken. Also, much like the false imprisonment rule, merely reporting a crime and the suspected criminal to law enforcement authorities does not constitute procurement of criminal proceedings when the authorities exercise discretion in deciding whether to prosecute.[28]

 We held in *Lieck*, however, that a person reporting criminal conduct to the authorities may nevertheless be considered to have procured the proceedings if he "provides information which he knows is false."[29] This exception to the rule was justified because a person "who provides false information cannot complain if a prosecutor acts on it; he cannot be heard to contend that the prosecutor should have known better. Such a person has procured the resulting prosecution, regardless of the actions of the prosecutor, and the causation element for malicious prosecution is satisfied."[30] This reasoning applies with equal force in the false imprisonment context.[31] A person who merely gives law enforcement authorities information may not have directed or requested a subsequent arrest. But when that person knowingly gives false information, he cannot complain if the law assumes that the subsequent arrest was made "to carry out [his] request."[32] Such a person has instigated the arrest, and false imprisonment's causation requirement is satisfied.

 Following *Schnaufer* and our reasoning in *Lieck*, we agree that a defendant may be liable for instigating an unlawful arrest if he knowingly provides false information to law enforcement authorities resulting in the arrest. Applying that principle here, we see that Rodriguez has alleged that Wal–Mart failed to disclose that its identification system was unreliable, but not that it knowingly provided

24. *See, e.g.,* 32 Am.Jur.2d *False Imprisonment* § 41.

25. 881 S.W.2d 288, 293 (Tex.1994).

26. *Id.* at 292–93.

27. Restatement (Second) of Torts § 653 cmt. g; *see also Lieck,* 881 S.W.2d at 293.

28. *See Lieck,* 881 S.W.2d at 293; Restatement (Second) of Torts § 653 cmt. g.

29. *Lieck,* 881 S.W.2d at 293; *see also* Restatement (Second) of Torts § 653 cmt. g.

30. *Lieck,* 881 S.W.2d at 294.

31. *See, e.g.,* Harper, The Law of Torts § 4.11, at 4:121–22.

32. 32 Am.Jur.2d *False Imprisonment* § 41.

false information. As we noted in *Lieck*, failing to make a full and fair disclosure is not the equivalent of knowingly providing false information.[33] All citizens have a clear legal right to report criminal misconduct to law enforcement authorities.[34] In fact, the law encourages such communication.[35] Although a private citizen may be liable for directing an arrest that results in a false imprisonment, the law will not generally permit inferring such direction simply from a report of crime made to the authorities.[36] Such an inference is justified when a party provides information in its report that it knows is false.[37] Merely providing inaccurate or incomplete information, however, will not make a party liable for instigating a subsequent false imprisonment.[38]

Rodriguez argues that *Leon's Shoe Stores, Inc. v. Hornsby*[39] supports his position that Wal–Mart's lack of disclosure can make it liable for instigating his alleged unlawful detention. In *Hornsby*, a store's credit manager called the police to report a customer suspected of attempting to cash a forged check.[40] The police arrived, the manager pointed out the suspect, and the suspect was arrested.[41] But the manager testified at trial that, after calling the police, she had recognized the suspect as a regular customer of the store and knew that the customer's signature was not forged.[42] Unfortunately, she failed to tell this to the police before they made their arrest.[43] In fact, the arresting officer testified that the manager told him just prior to the arrest that the suspect was not a customer of the store.[44] The court of appeals, acknowledging that there had been no explicit request for the arrest, held that the manager's failure to make a full disclosure to the police caused the arrest and made her liable for the false imprisonment.[45]

*Hornsby*'s facts distinguish it from this case. The defendant in *Hornsby* was present at the arrest and, according to her testimony at trial, knew that the customer she pointed out to the police was not guilty of the crime she had reported.[46] Here, no Wal–Mart employee was present at the arrest, and Rodriguez does not allege that any Wal–Mart employee knew he was innocent. Instead, he argues that Wal–Mart should be liable because it failed to disclose that its employees could not be sure that the number Wal–Mart's system associated with the R & C account accurately identified the hot check's drawer.

■ Rodriguez advocates a rule predicating liability on negligent rather than

**33.** *Lieck,* 881 S.W.2d at 294.

**34.** *See Joske,* 44 S.W. at 1063.

**35.** *See, e.g., Sparkman,* 501 S.W.2d at 743.

**36.** *See, e.g., Joske,* 44 S.W. at 1063.

**37.** *See Schnaufer,* 124 S.W.2d at 942; 32 Am. Jur.2d *False Imprisonment* § 41; Harper, The Law of Torts § 4.11, at 4:121–22.

**38.** *See, e.g., Schnaufer,* 124 S.W.2d at 942; *Sneed,* 938 S.W.2d at 185; *Dayton Hudson Corp. v. Eldridge,* 742 S.W.2d 482, 487 (Tex. App.-Dallas 1987, writ denied); *see also* 32 Am.Jur.2d *False Imprisonment* § 41; Harper, The Law of Torts § 4.11, at 4:121–22.

**39.** 306 S.W.2d 402 (Tex.Civ.App.-Waco 1957, no writ).

**40.** *Id.* at 407.

**41.** *Id.*

**42.** *Id.*

**43.** *Id.* at 410.

**44.** *Id.* at 408.

**45.** *Id.* at 410.

**46.** *Id.* at 407.

willful conduct. But false imprisonment is an intentional tort, requiring a willful detention by the defendant.[47] We recognize that here, it is unlikely that Rodriguez would have been arrested had Wal–Mart's employees followed Wal–Mart's policies, checking identification and printing Long's name below his illegible signature, or had Wal–Mart more carefully designed its check identification system. His arrest was unfortunate, unnecessary, and embarrassing. But we decline to hold that negligently providing inaccurate or incomplete information to legal authorities will make a reporting party liable for false imprisonment.[48] Hornsby does not explicitly hold otherwise. At best the defendant in that case knew the suspect was innocent but failed to tell the police at the time of arrest; at worst the defendant lied to the police about what she knew. To the extent that Hornsby can be read to imply that something less than knowingly providing false information will make a party liable for instigating a false imprisonment, we disapprove it.

The court of appeals held that Rodriguez presented no evidence that Wal–Mart knew any information in its complaint was false.[49] We agree. And while we recognize that Wal–Mart could expose its innocent customers to the serious risk of arrest by not carefully adhering to its policies and procedures governing the receipt and acceptance of its customers' checks, those customers, though, will have to seek a remedy through other avenues such as defamation, assuming all necessary elements are shown. The claim here is false imprisonment. And false imprisonment requires knowingly providing false information.

Ultimately, Rodriguez's evidence shows only that Wal–Mart's employees could not have been certain that the driver's license number printed on the returned check belonged to the check's drawer, but it might have. It does not show that Wal–Mart knew the information that it provided was false.

Rodriguez has thus failed to raise a fact issue about whether Wal–Mart willfully detained him by instigating his arrest.[50] The court of appeals therefore erred in reversing the trial court's summary judgment on Rodriguez's false imprisonment claim.[51]

We reverse the court of appeals' judgment in part and render judgment for Wal–Mart.

Justice SCHNEIDER did not participate in the decision.

---

47. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985); *see also* RESTATEMENT (SECOND) OF TORTS § 35.

48. *See, e.g., Schnaufer,* 124 S.W.2d at 942; *Sneed,* 938 S.W.2d at 185; *Eldridge,* 742 S.W.2d at 487; *see also* 32 AM.JUR.2D *False Imprisonment* § 41; HARPER, THE LAW OF TORTS § 4.11, at 4:121–22.

49. 52 S.W.3d at 821.

50. *See* TEX.R. CIV. P. 166(a)(i).

51. *See id.*