Appellant’s Motion for Rehearing En Banc Granted; Majority and
Dissenting Opinions Issued October 17, 2002, Withdrawn; Affirme
















Appellant’s
Motion for Rehearing En Banc Granted; Majority and Dissenting Opinions Issued
October 17, 2002, Withdrawn; Affirmed on Rehearing and Majority and Dissenting
Opinions on Rehearing En Banc filed August 7, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00507-CV

____________

 

DRC PARTS & ACCESSORIES, L.L.C., Appellant

 

V.

 

VM MOTORI, S.P.A., Appellee

 

________________________________________________________

 

On Appeal from
the 151st District Court

Harris County, Texas

Trial Court
Cause No. 98-24396

 

________________________________________________________

 

M A J O R I T
Y   O P I N I O N   O N

R E H E A R I
N G   E N   B A N C

 

            Appellant’s motion for rehearing en
banc is granted, the majority and dissenting opinions issued in this case on October 17, 2002, are
withdrawn, and the following majority and dissenting opinions on rehearing en
banc are issued in their place.

            In this breach of contract and fraud
case, DRC Parts & Accessories, L.L.C. (“DRC”), appeals a summary judgment
entered in favor of VM Motori, S.P.A. (“VM”) on the
grounds that its summary judgment evidence raised a fact issue on each of its
two claims against DRC.  We affirm.

Background

            Before 1995, VM, an Italian
manufacturer and seller of industrial diesel engines, parts, and accessories,
contracted with DRC, among others, to distribute its products in North
 America.  However, in
1995, VM was purchased by Detroit Diesel Corporation (“DDC”), an American
manufacturer and distributor of diesel engines, parts, and accessories that had
an existing network of sales representatives in North
 America.  Despite the
resulting decrease in its need for DRC to distribute its products, VM agreed to
continue the relationship because of DRC’s extensive
knowledge of VM’s products.  On May 14, 1996, VM and DRC entered into a written contract (the
“contract”) containing the following provision (the “provision”):

VM . . .
grants on a non-exclusive basis . . . DRC . . . the right to purchase and sell
VM diesel engine ORIGINAL SPARE PARTS for engine series and/or engine model
versions not in-current production by VM and VM ORIGINAL ACCESSORIES for
current and non-current series of engines, in the USA or Canada,
hereinafter referred to as the TERRITORY . . . .

The
contract further provided that it “substitute[d] and invalidate[d] any other
former agreement.”

            Thereafter, DRC filed suit against
VM for breach of contract, alleging that: (1) the contract gave it the
exclusive right to sell parts for engines that were no longer being produced by
VM, and that VM had breached the agreement by selling such parts to others; and
(2) in the alternative, if the contract granted DRC only a non-exclusive right,
then VM fraudulently induced DRC to enter into and continue performance under
the contract by nevertheless misrepresenting that DRC’s
right would be exclusive.  VM moved for summary
judgment against these claims[1] on
the grounds that: (1) the contract unambiguously gave DRC only a non-exclusive
right to distribute non-current production engine parts; and (2) as a matter of
law, DRC could not rely on the alleged misrepresentation because it directly
contradicted the unambiguous terms of the contract.  The trial court granted VM summary judgment
against both of DRC’s claims.

Standards of Review

            A traditional summary judgment may
be granted if the motion and summary judgment evidence show that there is no
genuine issue of material fact and the moving party is entitled to judgment as
a matter of law on the issues expressly set out in the motion or response.  Tex. R. Civ. P. 166a(c).  In
reviewing such a motion for summary judgment, we take all evidence favorable to
the nonmovant as true and resolve every doubt, and
indulge every reasonable inference, in the nonmovant’s
favor.  Tex. Commerce Bank, N.A. v.
Grizzle, 96 S.W.3d 240, 252 (Tex. 2002).

            A no-evidence motion for summary
judgment must be granted if: (1) the moving party asserts that there is no
evidence of one or more specified elements of a claim or defense on which the
adverse party would have the burden of proof at trial; and (2) the respondent
produces no summary judgment evidence raising a genuine issue of material fact
on those elements. See Tex. R. Civ. P. 166a(i).  In reviewing a no-evidence summary judgment,
we review the record in the light most favorable to the nonmovant
to determine whether more than a scintilla of evidence was presented on the
challenged elements of the nonmovant’s claim.  See Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).

Breach of Contract: Ambiguity

            DRC’s
first issue challenges the summary judgment on its breach of contract claim on
the ground that the contract is ambiguous, raising a question of fact.  In particular, DRC contends that the term
“non-exclusive,” as used in the provision, can reasonably be interpreted to
mean either that: (1) VM retained the right to sell parts for engines not
in-current production through entities other than DRC; or (2) DRC had the
exclusive right to sell such parts.

            Whether a contract is ambiguous is a
question of law for the court to decide. 
Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000).  A contract is
not ambiguous if it is so worded that it can be given a definite or certain
legal meaning.  Wal-Mart Stores, Inc. v. Sturges,
52 S.W.3d 711, 728 (Tex. 2001).  Conversely, a
contract is ambiguous if its language is subject to two or more reasonable
interpretations.  Monsanto Co. v. Boustany,
73 S.W.3d 225, 229 (Tex. 2002).

            However, an ambiguity does not arise
simply because the parties advance conflicting interpretations of the
contract.   Wal-Mart Stores, 52 S.W.3d at 728.  Rather, for an ambiguity to exist, both
interpretations must be reasonable.  Id.  If so, a fact issue is created concerning the
parties’ intent.  See Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).

            In this case, the contract
unequivocally grants DRC the right, on a “non-exclusive
basis” to purchase and sell the engine parts in question.  DRC has cited no language in the contract
that remotely supports an exclusive right to sell those parts or is in any way
inconsistent with a non-exclusive right. 
Although DRC relies on the circumstances surrounding the formation of
the contract to establish that its interpretation is reasonable, such parol evidence is not admissible for the purpose of creating an ambiguity in an agreement.  Kelley-Coppedge, Inc. v. Highlands Ins. Co.,
980 S.W.2d 462, 464 (Tex. 1998).  Rather, it is only when the language of a
contract is ambiguous, either on its face or when applied to the subject matter
of the contract,[2] that
a court may consider extrinsic evidence to determine the meaning of the
instrument.  See Nat’l Union Fire Ins. Co. v. CBI Indus. Inc., 907 S.W.2d 517, 521 (Tex.
1995).  Because the contact in this case
is not ambiguous in either respect, DRC has not demonstrated a fact issue on
its contract claim (that VM breached the contract by selling the engine parts
in question to others).  Accordingly, we
overrule DRC’s first issue.

Fraudulent Inducement

            DRC’s
second issue contends that, if the contract term “non-exclusive” is unambiguous
(as we conclude above), then a fact issue was raised on its fraudulent
inducement claim by evidence that VM falsely represented to DRC that it would
have an exclusive right to distribute parts for non-current production engines.

            One of the elements of a fraud claim
is that the plaintiff actually and
justifiably relied on the misrepresentation to suffer injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Restatement (Second) of
Torts § 537 (1977). 
In this regard, a party to an arm’s length transaction must exercise
ordinary care and reasonable diligence for the protection of his own interests,
and a failure to do so is not excused by mere confidence in the honesty and
integrity of the other party.  Thigpen v. Locke, 363
S.W.2d 247, 251 (Tex. 1962).  Therefore,
reliance upon an oral representation that is directly contradicted by the
express, unambiguous terms of a written agreement between the parties is not
justified as a matter of law.[3]

            This principle is also dictated by
policy and practical considerations.  If
written contracts are to serve a purpose under the law, relative to oral
agreements, it is to provide greater certainty regarding what the terms of the
transaction are and that those terms will be binding, thereby lessening the
potential for error, misfortune, and dispute.

            By contrast, the approach advocated
by DRC and the dissent would, in effect, create a contractual relationship that
is governed by its written contract only to the extent it does not contradict a
previous oral agreement between the parties. 
This is because a party’s exercise of a right under the written
contract, which is contrary to the oral agreement, would subject that party to
a fraudulent inducement claim based on the oral agreement.  In that event, however, the party who entered
into the written contract while relying on a contrary oral agreement would have
thereby itself entered into the written contract with an
intent not to perform it.  Thus,
in order to show its reliance on the oral agreement to sustain its own 

 class=Section2>

fraudulent
inducement claim, that party would necessarily prove that it was guilty of
fraudulent inducement as well.[4]

            The essential issue, then, is not
whether that party’s evidence of the contrary oral agreement is admissible or
sufficient to prove that agreement,[5] but
instead whether the law will deem such reliance to be justified and thereby
favor that party to the detriment of the other contracting party, which has at
least declared its intent in the contract and sought to abide by its
terms.  Because such an approach would
defeat the ability of written contracts to provide certainty and avoid dispute,
the prevailing rule, recited above, is instead that a party who enters into a
written contract while relying on a contrary oral agreement does so at its
peril and is not rewarded with a claim for fraudulent inducement when the other
party seeks to invoke its rights under the contract.

            In this case,
therefore, even assuming DRC’s evidence to be
admissible and sufficient to show its actual reliance on a contrary oral
agreement, that reliance could not, as a matter of law, have been justified.  Accordingly, we overrule DRC’s
second point of error and affirm the judgment of the trial court.

 

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Majority and Dissenting
Opinions on Rehearing En Banc filed August 7,
 2003.

 

En Banc Panel consists of Chief Justice Brister, and
Justices Yates, Anderson, Hudson, Fowler, Edelman, Frost, Seymore, and
Guzman.  (Chief Justice Brister and
Justices Yates, Anderson, Frost, and Seymore join the Majority Opinion.  Justice Hudson filed a Dissent in which
Justices Fowler and Guzman join.)

 











[1]           Although VM moved for a traditional summary judgment on
both claims and also for a no-evidence summary judgment on the contract claim,
the difference is not material to our disposition.





[2]           Such a “latent ambiguity” would exist, for example, if a
contract called for delivery to the “green house on Pecan Street
,” but there were two green
houses on that street.  Nat’l Union Fire, 907 S.W.2d at 520 n.4.





[3]           Scheduled Airlines
Traffic Offices, Inc. v. Objective Inc., 180 F.3d 583, 590 (4th Cir. 1999); Republic Nat’l Bank v. Hales, 75 F. Supp. 2d 300, 315 (S.D.N.Y.
1999); Lowe v. Amerigas,
Inc., 52 F. Supp. 2d 349, 361 (D. Conn. 1999); Schwaiger v. Mitchell Radiology Assocs.,
652 N.W.2d 372, 377 (S.D. 2002); Abboud v. Michals, 491 N.W.2d 34, 41-42 (Neb. 1992).





[4]           See Formosa Plastics
Corp. USA v. Presidio Eng’rs & Contractors, Inc.,
960 S.W.2d 41, 47-48 (Tex. 1998) (recognizing that a
promise of future performance constitutes fraud in the inducement if the
promise was made with no intention of performing).





[5]           See Town N. Nat’l
Bank v. Broaddus, 569 S.W.2d 489, 492, 493-94 (Tex. 1978) (holding that a payee’s
representation to the maker of a note, that the maker would not be liable
thereon, in the absence of trickery, did not constitute fraud in the inducement
(so as to fall within an exception to the parol
evidence rule)).