In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00119-CV


______________________________




JOYCE DRISKILL AND JAMES DRISKILL, Appellants



V.



FORD MOTOR COMPANY AND TEXAS INSTRUMENTS, INC., Appellees




 


On Appeal from the 294th Judicial District Court


 Van Zandt County, Texas


Trial Court No. 05-00302




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 James and Joyce Driskill's 1993 Lincoln Town Car caught fire in 2003, while turned off and
parked in the garage at their house. The fire spread to the Driskills' house, destroying most of their
personal belongings. A subsequent investigation determined that the fire originated in the left rear
area of the car's engine compartment. Ultimately, the Driskills filed suit in Van Zandt County,
Texas, (1) against Ford Motor Company, E. I. du Pont de Nemours and Company, (2) and Sensata
Technologies, Inc., formerly known as Texas Instruments, Inc. (3) The Driskills alleged that a defect
in the speed control deactivation switch (SCDS) caused the car to catch fire. The trial court granted
a motion to exclude the Driskills' expert in part and then granted the motions for summary judgment
filed by Ford and Sensata. When the Driskills' motion for new trial was overruled by operation of
law, the Driskills appealed.

 We affirm the trial court's judgment because (1) the motions for summary judgment complied
with Rule 166a(i), (2) there is no evidence of proximate cause, and (3) a res-ipsa-loquitur argument
has not been preserved.

 Both Ford and Sensata filed no-evidence motions for summary judgment. (4) A no-evidence
summary judgment is essentially a pretrial motion for a directed verdict. We, therefore, apply the
same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in
reviewing a directed verdict. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003);
Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). The test for legal sufficiency
is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict
under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). We must determine
whether the nonmovant produced any evidence of probative force to raise a fact issue on the material
questions presented. Rodriguez, 92 S.W.3d at 506; Woodruff v. Wright, 51 S.W.3d 727, 734 (Tex.
App.--Texarkana 2001, pet. denied).

 A no evidence point will be sustained when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact.

Chapman, 118 S.W.3d at 751. A nonmovant will defeat a no-evidence summary judgment motion
if the nonmovant presents more than a scintilla of probative evidence on each element of his or her
claim. Id.; Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70-71 (Tex. App.--Austin 1998, no pet.). 
More than a scintilla of evidence exists when the evidence "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the
evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." Chapman,
118 S.W.3d at 751.

(1) The Motions for Summary Judgment Complied with Rule 166a(i)

 The Driskills argue the summary judgment motions did not meet the requirements of Rule
166a(i) of the Texas Rules of Civil Procedure. See Tex. R. Civ. P. 166a(i). The Driskills' argument,
as we understand it, is that the Driskills have two main complaints: (a) the motions do not allege
all the elements the Driskills were required to prove and (b) the motions do not distinguish between
manufacturing defect and design defect. 

 Neither Ford nor Sensata listed all the elements the Driskills were required to prove. Both
Ford and Sensata, though, did specifically reference cause-in-fact, an essential element the Driskills
were required to prove. Thus, the question is whether Rule 166a(i) of the Texas Rules of Civil
Procedure requires the defendant to list all the elements of the cause of action or merely reference
the element on which there is no evidence.

 A party may move for summary judgment on the ground that no evidence exists as to one or
more of the essential elements of the nonmovant's claims on which the nonmovant would have the
burden of proof at trial. See Chapman, 118 S.W.3d at 750-51. We agree that a motion for summary
judgment that fails to present any grounds is legally insufficient as a matter of law, because the rule
prohibits "conclusory" or "general" no-evidence motions. See Bean v. Reynolds Realty Group, Inc.,
192 S.W.3d 856, 859 (Tex. App.--Texarkana 2006, no pet.); Meru v. Huerta, 136 S.W.3d 383, 387
(Tex. App.--Corpus Christi 2004, no pet.). The cases cited by the Driskills do not support the
proposition that the movant must list all the elements of the cause of action. Ford and Sensata did
specifically allege there was no evidence of cause-in-fact. The motions were not conclusory or
general motions. 

 Although Ford and Sensata did not clearly distinguish between a manufacturing defect and
design defect in their summary judgment motions, such a distinction was unnecessary. Cause-in-fact
is a requirement common to both theories of product liability. The motions complied with
Rule166a(i) of the Texas Rules of Civil Procedure.










(2) There Is No Evidence of Proximate Cause 

 We next turn to the heart of this case: whether there is evidence of proximate cause. (5)
Because the Driskills brought this products liability (6) suit pleading negligence rather than strict
liability, the Driskills were required to prove proximate causation. (7) Proximate cause requires proof
of two elements, cause-in-fact and foreseeability. See Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.
1996). Only the cause-in-fact element is at issue in this case.

 The Driskills claim the record contains sufficient circumstantial evidence of proximate cause. 
The Texas Supreme Court has long held circumstantial evidence may be used to establish elements
of a products liability case. See Ford Motor Co. v. Ridgeway, 135 S.W.3d 598, 601 (Tex. 2004);
Darryl v. Ford Motor Co., 440 S.W.2d 630, 632 (Tex. 1969). While circumstantial evidence may
be used, expert testimony may be required depending on the facts of the case. 

 Ford and Sensata claim expert testimony is required in all products liability cases. Expert
testimony "is generally encouraged if not required to establish a products liability claim." Ledesma,
242 S.W.3d at 42. In some cases, expert testimony may not be required. Whether expert testimony
is required depends on whether the issue involves matters beyond "the general experience and
common understanding of laypersons." Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 583 (Tex.
2006) (expert testimony needed to establish causation in products liability case where plaintiff
alleged that defect in truck's fuel and battery systems caused fire); Nissan Motor Co. v. Armstrong,
145 S.W.3d 131, 137 (Tex. 2004) (expert testimony required to establish causation in unintended
acceleration case involving possible product defect). Whether a particular issue requires the
presentation of expert testimony is an issue of law. Tamez, 206 S.W.3d at 583. Thus, whether
expert testimony was required depends on whether the theory argued by the Driskills involved issues
beyond the general experience and common understanding of laypersons.

 The trial court's order excluded the testimony of Bob Dennis only as to the causation of the
fire, not its place of origin. (8) As such, there is expert testimony concerning where the fire originated. 
Dennis testified the fire originated in the left rear portion of the engine compartment. Photographs
of the car were introduced into evidence. Due to the intense heat, the SCDS was "burned and melted
beyond recognition." In their depositions, James and Joyce Driskill stated that, before the fire, the
cruise control had become inoperative. 

 The Driskills argue the record establishes facts meeting the NHTSA criteria for identifying
engine compartment fires which were SCDS related. We are concerned that the "criteria" contained
in the report established only the parameters of the study data rather than establishing a test for
determining the cause of a fire. The report states "ODI used the following criteria to determine
whether an incident would be counted as a speed control deactivation switch fire for the purposes
of this investigation . . . ." There is a difference between establishing the parameters of a study and
establishing criteria or a test to determine the cause of a fire. Even if the report establishes a test,
the Driskills are essentially arguing the court can act as an expert by applying the "criteria" to the
facts of this case. 

 There is no expert testimony bridging the analytical gap between the origin of a fire in the
left rear area of an engine compartment and the conclusion that the SCDS in that area was the cause-
in-fact of the fire. While the evidence creates a strong suspicion that the defect caused the fire, the
suspicion is just that, a suspicion. In Tamez, the Texas Supreme Court held that circumstantial
evidence establishing, among other things, a design defect containing a possible ignition source was
not more than a scintilla of evidence of the actual cause-in-fact of the fire. Id. at 583-84. Whether
the SCDS caused the fire involves complex questions of chemistry, electrical engineering, and
hydraulic engineering. The issue is beyond the general experience and common understanding of
a layperson. Expert testimony was required to establish the SCDS was the cause-in-fact of the fire. 
Because the Driskills presented no expert testimony on causation other than the location of the origin
of the fire, there is less than a scintilla of evidence that the SCDS was the cause-in-fact of the fire
in this case. The trial court did not err in granting Ford's and Sensata's no-evidence motions for
summary judgment.

 The Driskills' gross negligence claim fails for the same reasons as its negligence claim. A
defendant "cannot be grossly negligent without being negligent." Trevino v. Lightning Laydown,
Inc., 782 S.W.2d 946, 949 (Tex. App.--Austin 1990, writ denied); see Shell Oil Co. v. Humphrey,
880 S.W.2d 170, 174 (Tex. App.--Houston [14th Dist.] 1994, writ denied). Because there is no
evidence of causation, the trial court did not err in granting summary judgment on the gross
negligence claims.

(3) A Res-Ipsa-Loquitur Argument Has Not Been Preserved

 In the alternative, the Driskills argue that the doctrine of res ipsa loquitur applies to this case. 
The Driskills, though, failed to raise res ipsa loquitur in their response to the motions for summary
judgment. As argued by Sensata, (9) the Driskills cannot raise res ipsa loquitur for the first time on
appeal. A summary judgment cannot be reversed on appeal based on an issue that was not expressly
and timely presented to the trial court by written response or other document. Tex. R. App. P. 33.1;
Tex. R. Civ. P. 166a(c); see City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex.
1979). Because the Driskills failed to raise the issue in the trial court, this argument is not preserved
for appellate review.

 Because the trial court did not err in granting Ford's and Sensata's no-evidence motions for
summary judgment, it is not necessary to consider whether the trial court erred in granting Ford's
traditional motion for summary judgment or whether the component part manufacturer doctrine
shields Sensata from liability. (10) We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 10, 2008

Date Decided: October 17, 2008
1. This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas
Supreme Court's docket equalization program. We are not aware of any conflict between the
precedent of the Tyler Court of Appeals and the precedent of this Court on any issue relevant in this
appeal. See Tex. R. App. P. 41.3.
2. The Driskills nonsuited du Pont before the summary judgment proceedings. 
3. In the interest of convenience, we will refer to Texas Instruments as Sensata regardless of
the status of the corporate entity at the relevant times.
4. Ford's motion for summary judgment is both a no-evidence and traditional motion for
summary judgment. Because we do not reach the issue of whether the trial court erred in granting
Ford's traditional motion for summary judgment, we will merely recite the standard for a no-evidence
motion.
5. Because we hold herein that there is no evidence of proximate cause, we need not decide
whether there is evidence of a product defect. "A product may be unreasonably dangerous because
of a defect in manufacturing, design, or marketing." Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 335 Tex. (1998). The Driskills contend there is more than a scintilla of evidence of
both a manufacturing defect and a design defect. Ford challenges the evidence supporting a product
defect. Sensata does not challenge the existence of a design defect. A manufacturing defect exists
"'when a finished product deviates, in terms of its construction or quality, from the specifications or
planned output in a manner that renders it unreasonably dangerous.'" Ford Motor Co. v. Ledesma,
242 S.W.3d 32, 41 n.16 (Tex. 2007) (quoting Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 434
(Tex. 1997)). A design defect exists when a condition of the product renders it "unreasonably
dangerous as designed, taking into consideration the utility of the product and the risk involved in
its use." Hernandez v. Tokai Corp., 2 S.W.3d 251, 258 (Tex. 1999) (quoting jury instruction
contained in Turner v. Gen. Motors Corp., 584 S.W.2d 844, 847 n.1 (Tex. 1979)).
6. The Texas Supreme Court has adopted the Second Restatement's standard for products
liability. See Bostrom Seating, Inc. v. Crane Carrier Co., 140 S.W.3d 681 (Tex. 2004); Martinez,
977 S.W.2d at 335. The Second Restatement provides:


 (1) one who sells any product in a defective condition unreasonably dangerous to the
user or consumer or to his property is subject to liability for physical harm thereby
caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial
change in the condition in which it is sold.


Restatement (Second) of Torts § 402A (1965)). "In other words, a manufacturer shall be held
liable if it negligently manufactures a product that, unless carefully designed and manufactured,
involves an unreasonable risk of causing harm." Toshiba Int'l Corp. v. Henry, 152 S.W.3d 774, 784
(Tex. App.--Texarkana 2004, no pet.). The four elements for a products liability action are:


 (a) the product must be defective; (b) the product must reach the consumer without
substantial change from the time it leaves the possession and control of the
manufacturer or seller; (c) the defective condition of the product must render the
product unreasonably dangerous; and (d) the unreasonably dangerous condition of
the product must be the cause of the injury to the user.


Id. at 778.
7. Strict liability requires proof of producing, as opposed to proximate, cause. The Texas
Supreme Court has held proximate and producing cause differ in "that proof of proximate cause
entails a showing that the accident was foreseeable, while proof of producing cause does not." Gen.
Motors Corp. v. Saenz ex rel. Saenz, 873 S.W.2d 353, 357 (Tex. 1993).
8. The Driskills' insurance company hired Dennis to investigate the fire. Dennis admitted in
his deposition that he was not an engineer and could not testify as to whether the SCDS was the
source of the fire. Dennis later retracted this testimony in an affidavit and stated that, after reviewing
the National Highway Traffic Safety Administration (NHTSA) reports, he could testify the SCDS
was the source of the fire. Ford argues we should not consider Dennis' affidavit because he gave
inconsistent answers. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) (do
not defeat motion for summary judgment by using affidavit which impeaches, without explanation,
sworn testimony); Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)
(litigant cannot give one version of facts in deposition, then suddenly remember new "answers" in 
later affidavit). This is not in issue here, because the Driskills have not challenged on appeal the trial
court's ruling limiting Dennis' testimony.
9. Ford cites Prieto v. Val Verde Memorial Hospital, 747 S.W.2d 487, 489 (Tex. App.--San
Antonio 1988, no writ), for the proposition that res ipsa loquitur must be pled in the plaintiff's
petition. It is not necessary for us to decide whether res ipsa loquitur must be pled. 
10. According to Sensata, the design defect did not originate in the component part it
manufactured; rather, the design defect originated in Ford's design incorporating the component part.
See Henry, 152 S.W.3d at 779. Because there is no evidence of causation, it is not necessary to
decide this issue.



ly: Times New Roman"> The provision's plain language does not require that the actor actually intend death or serious
bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would
be capable of causing death or serious bodily injury. Bailey v. State, 38 S.W.3d 157, 159 (Tex. Crim.
App. 2001) (quoting McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). 

 Here, the jury was charged that, to find Lowe guilty of using a deadly weapon, the State was
required to prove that Lowe used a knife to cause bodily injury to Colbert and in the manner that
Lowe used and intended to use the knife, the knife was capable of causing death or serious bodily
injury. The jury did not have to conclude Lowe used the knife and intended the knife to be used as
a deadly weapon. 

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, the appellate court views all the evidence in a
neutral light and determines whether the evidence supporting the verdict is so weak that the jury's
verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the
evidence is contrary to the verdict. Id.; see Watson, 2006 Tex. Crim. App. LEXIS 2040; Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 A knife is not a deadly weapon per se, and as such, the jury was instructed that a deadly
weapon is "anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury." See Tex. Penal Code Ann. § 1.07(a)(17)(B) (defining a deadly weapon);
McCain, 22 S.W.3d at 503 (holding that "the mere carrying of a butcher knife during such a violent
attack . . . was legally sufficient to show that the butcher knife was a deadly weapon"). Factors to
consider in determining whether the knife was capable of causing death or serious bodily injury
include (1) the size, shape, and sharpness of the knife; (2) the manner in which the appellant used
the weapon; (3) the nature or existence of inflicted wounds; (4) testimony of the knife's
life-threatening capabilities; (5) the physical proximity between the victim and the knife; and (6) the
words spoken by the appellant. See, e.g., Thomas v. State, 821 S.W.2d 616, 619-20 (Tex. Crim.
App. 1991); Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (op. on reh'g).

 The phrase "used . . . a deadly weapon" during the commission of the offense means only that
the deadly weapon was employed or utilized in order to achieve its purpose. Tex. Code Crim.
Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2006); Patterson v. State, 769 S.W.2d 938, 941
(Tex. Crim. App. 1989). 

 There is no question that the weapon was a knife and that it was used to cut Colbert's throat. 
The evidence shows that Colbert was bleeding profusely and that his blood was all over the crime
scene. Officer Hamilton followed a trail of Colbert's blood, and found onlookers mopping up the
blood. Hamilton described Colbert as bleeding profusely and said that he was afraid Colbert would
bleed out and die before help could arrive. This is both legally and factually sufficient to support
the jury's determination that the knife was, in the manner of its use and intended use, capable of
causing death or serious bodily injury and, thus, a deadly weapon. The contention of error is
overruled.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: August 4, 2006

Date Decided: November 29, 2006


Publish

1. Counsel correctly points out that the Texas Court of Criminal Appeals has recognized that
a person has the right to defend against apparent danger to the same extent as if the danger was real. 
See Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).
2. "Reasonable belief" was defined in Valentine as "a belief that would be held by an ordinary
and prudent person in the same circumstances as the defendant." Valentine, 587 S.W.2d at 401. In
the instant case, the trial court used exactly the same definition.