Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00747-CV

Rufus **ODEM**,
Appellant

v.

**DELOITTE & TOUCHE, LLP**, John Morgan, and Kathie Schwerdtfeger,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-15162
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:          Catherine Stone, Chief Justice
                  Sandee Bryan Marion, Justice
                  Marialyn Barnard, Justice

Delivered and Filed:  February 2, 2011

AFFIRMED

Appellant Rufus Odem brought claims for defamation, tortious interference with contract, conspiracy, negligence, and gross negligence against Deloitte & Touche, LLP, John Morgan, and Kathie Schwerdtfeger (collectively "Deloitte & Touche"). Odem's claims arose out of a report prepared by Deloitte & Touche following a quality assessment review of the San Antonio Water System's internal audit department, which was conducted pursuant to an agreement between Deloitte & Touche and the San Antonio Water System ("SAWS"). Deloitte & Touche moved

for summary judgment on all of Odem's claims, and the trial court granted the motion in its entirety, ruling that Odem should take nothing. Odem appeals contending the trial court erred in granting Deloitte & Touche's motion for summary judgment. We affirm the judgment in favor of Deloitte & Touche.

## BACKGROUND

In 1985, Odem went to work for the City Water Board, which later became SAWS. Odem worked in the internal audit department. Within a year of his employment Odem was promoted to director of the internal audit department. According to Odem, during his tenure, which spanned more than twenty years, his department saved SAWS millions of dollars by exposing waste and corruption.

In January 2005, SAWS hired a new CEO, David Chardavoyne. SAWS was undergoing a reorganization, which included hiring new management personnel and forming an Audit Committee. From the beginning, Odem and Chardavoyne had a troubled relationship. Odem, believing Chardavoyne was discriminating against him based on race and age, filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in July 2005. The dispute was publicized in the local media. The EEOC conducted an investigation, and based on the information obtained as a result of that investigation, it issued a Determination Letter on August 30, 2006. The EEOC determined it could not find discrimination based on age, but there was evidence to support Odem's claim of racial discrimination, specifically that he was: (1) denied promotional opportunities, (2) denied the opportunity to attend a financial seminar, (3) prohibited from hiring department staff, (4) barred from SAWS meetings, (5) stripped of essential duties, (6) given little or no cooperation by other SAWS employees at the direction of Chardavoyne, and (7) scrutinized by management in a way dissimilar to other similarly situated employees. The

EEOC issued a Right to Sue letter, and Odem filed suit against SAWS and Chardavoyne on September 12, 2006. The parties eventually entered into a settlement agreement pursuant to which Odem agreed to voluntarily resign in exchange for a monetary settlement of $635,000.00.

Also in 2005, in accord with the major changes that were occurring at SAWS, SAWS's external auditing firm, Padgett Stratemann, LLP recommended SAWS hire an outside consultant to perform a quality assessment review ("QAR") of SAWS's internal audit function. The summary judgment evidence shows Odem agreed with the need for a QAR. In October 2006, SAWS hired Deloitte & Touche to perform the QAR, and the parties entered into a consulting agreement that described the nature of the work to be performed, the time frame, and compensation. John Morgan and Kathie Schwerdtfeger were the Deloitte & Touche personnel involved with the SAWS review. In general, Deloitte & Touche was required to interview SAWS and Padgett Stratemann personnel, review working papers from a selection of audits done by SAWS's internal audit department, and compare SAWS to similar entities with regard to certain objective benchmark performance indicators. Deloitte & Touche was not hired to evaluate any specific personnel. After performing the QAR, Deloitte & Touche was required to produce a report containing its findings. That report was to be, pursuant to the consulting agreement, confidential.

After completing its fieldwork, Deloitte & Touche prepared a preliminary version of its conclusions, and sought input from SAWS management and Odem regarding the conclusions. In letters dated November 16 and November 22, Odem advised Deloitte & Touche about his problems with SAWS and Chardavoyne, explaining how the discrimination found by the EEOC led to a reduction in the function of the internal audit department. The evidence shows, and Odem admits, Deloitte & Touche listened and considered his point of view. In fact, based on the

issues raised by Odem, Deloitte & Touche took additional time to evaluate the internal audit department, and performed additional procedures. The QAR report was supposed to be presented by December 2006, but because of the additional work, it was not completed until January 8, 2007. The report stated the internal audit function of SAWS did not substantially conform to standards promulgated by the Institute for Internal Auditors, noting numerous failures in the internal audit function, including the failure to have a charter to define expectations of the internal audit department, the failure of the CEO and Audit Committee to clearly define the role of the director and the department, the failure to have a quality assurance function, the failure to have a formal continuing education policy for the department, the failure to develop a thorough risk-based planning model to support the annual audit plan, as well as several other failures. The report specifically noted at the end of these "key observations" regarding the internal audit function that "the IA Director expressed concern about several of our conclusions above. His concerns were taken into consideration in finalizing this report."

On January 17, 2007, SAWS placed Odem on paid administrative leave. Odem claimed the Deloitte & Touche report gave SAWS the excuse to place him on leave, but that the action was really a continuation of the discrimination and retaliation for his EEOC complaint and the lawsuit. According to Jerald Bailey, vice president of human resources for SAWS, the reason Odem was placed on administrative leave was not a result of the Deloitte & Touche report, which had not yet been reviewed by the SAWS board, but because of something that occurred in late 2006. According to Bailey, Odem was asked at a November 27, 2006 employee evaluation meeting to provide to Chardavoyne certain information regarding the employees in his department. Bailey stated Odem was specifically advised this information was to be provided before the next meeting, which was scheduled for December 5, 2006. Bailey testified Odem did

not provide the requested information for the December 5 meeting, and on December 6, Chardavoyne sent a memorandum to Odem documenting this. Bailey heard nothing more about the issue until the first week of January 2007 when he received a memorandum from Odem complaining about the December 6 memorandum from Chardavoyne. Odem claimed he had provided the information to Chardavoyne on December 5, but Chardavoyne was claiming Odem had failed to provide the information as part of his continued harassment and discrimination. Attached to Odem's memorandum to Bailey was the document Chardavoyne had requested for the December 5 meeting and it was dated December 5. Bailey, remembering Chardavoyne complaining the document had not been provided, took the matter to the IT department. Bailey testified he was confused by Odem's claim the document had been provided on schedule, as evidenced by the date on the document, and Chardavoyne's claim that he had not received it. IT advised Bailey the document, although dated December 5, was finalized between 4:00 p.m. and 5:00 p.m. on December 6. Bailey said given the information from IT, it was impossible for Odem to have provided the document to Chardavoyne on December 5, and therefore it appeared Odem had backdated the document to make it seem as if he had provided it to Chardavoyne by the December 5 deadline.

On January 17, 2007, Bailey had a meeting with Odem, asking him to explain the discrepancy. Bailey testified Odem had no response other than that the document could have been created on December 6. Bailey said he advised Odem this was a serious issue because the basis for Odem's most recent complaint to human resources was that Chardavoyne was unfairly criticizing him for not timely providing a report, when in fact the report had not been provided in a timely manner. At that point, Bailey told Odem he was being placed on administrative leave until Bailey could complete an investigation into the matter. Bailey testified Odem was told he

was being placed on leave because of the possible backdating of the report and subsequent misrepresentation with regard to his complaint against Chardavoyne. Although the Deloitte & Touche report was completed, and Bailey handed a copy to Odem as he was leaving, Bailey specifically testified during his deposition that he gave Odem a copy as "a courtesy" to advise Odem of "this other issue out there you need to be aware of." Bailey did not mean to suggest the report was the basis for placing Odem on administrative leave.

After Odem was placed on administrative leave, he filed a complaint against Schwerdtfeger with the Texas State Board of Public Accountancy ("the Board"), essentially making the same allegations ultimately brought against Deloitte & Touche in the present matter. The Board's enforcement division considered the complaint and found "there is no evidence of a violation of the Board's Rules of Professional Conduct or the Public Accountancy Act." Later, the Board's Technical Standards Review Committee recommended dismissal of Odem's complaint due to insufficient evidence.

As noted above, Odem's suit against SAWS and its CEO was settled in October 2007, and Odem voluntarily resigned as part of the settlement agreement. That same month, and after his complaints against Schwerdtfeger had been dismissed by the Board, Odem filed suit against Deloitte & Touche and its employees associated with the QAR of SAWS. In his suit, Odem alleged Deloitte & Touche libeled him in the QAR report, tortiously interfered with his employment contract with SAWS, acted negligently with respect to its QAR work, and engaged in a conspiracy with SAWS against Odem. In essence, Odem asserted that although Deloitte & Touche knew of his problems with Chardavoyne and other members of SAWS management, it prepared a report in cooperation with SAWS, and with minimal input from him, that ignored the discrimination issues and ultimately resulted in damage to his reputation and the loss of his

position. Deloitte & Touche filed traditional and no evidence motions attacking each of Odem's claims. After a hearing, the trial court granted Deloitte & Touche's motion in all respects, entering a take nothing judgment in favor of Deloitte & Touche. Odem perfected this appeal.

## DISCUSSION

### *Standard of Review*

Deloitte & Touche filed both traditional and no evidence motions for summary judgment. The propriety of a summary judgment, traditional or no evidence, is a question of law which we review de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a traditional motion for summary judgment, we must determine whether the successful movant in the trial court carried the burden of showing no genuine issue of material fact exists and was therefore entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336, 355 (Tex. 2005); *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *see* TEX. R. CIV. P. 166a(c). In making this determination, we must take evidence favorable to the nonmovant as true, crediting the nonmovant with all reasonable inferences and resolving any doubts in the nonmovant's favor. *Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When reviewing a no evidence motion for summary judgment, we also examine the record in the light most favorable to the nonmovant. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). However, once a party properly moves for no evidence summary judgment by specifically asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of proof at trial, the burden is on the nonmovant to present more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements.

TEX. R. CIV. P. 166a(i); *Wal-Mart*, 92 S.W.3d at 506. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### *Negligence/Gross Negligence*

Odem first contends the trial court erred in granting summary judgment on his claims for negligence and gross negligence. Odem did not bring a claim for negligent misrepresentation. In its motion for summary judgment, Deloitte & Touche asserted, among other grounds, that it was entitled to judgment on the negligence claims because it owed no duty to Odem as a matter of law. We agree.

To establish a claim for negligence, a plaintiff must show he was owed a duty by the defendant and the defendant breached that duty, proximately causing damage to the plaintiff. *Urena*, 162 S.W.3d at 550; *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). The threshold question in any negligence case is whether the defendant owed the plaintiff a duty. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Whether a duty exists is a question of law for the court to decide under the facts of the specific case. *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997). Based on Odem's pleadings, as well as his responses to interrogatories, which were submitted as part of Deloitte & Touche's summary judgment evidence, any duty in this case was based on Deloitte & Touche's professional engagement with SAWS. In his third amended petition, the live pleading, Odem alleged Deloitte & Touche was negligent and grossly negligent "in the preparation of the QAR." The QAR resulted from the professional engagement of Deloitte & Touche by SAWS.

Moreover, during discovery, Odem was specifically asked in interrogatories propounded by Deloitte & Touche to identify any duty owed to him by Deloitte & Touche. In response, Odem stated Deloitte & Touche "had a duty to perform under its contract with SAWS." The contract between Deloitte & Touche and SAWS called for Deloitte & Touche to provide professional accounting and auditing services. Because the engagement was for professional services, the negligence claim is one for professional malpractice, and the issue is whether the professional exercised the care, skill, and diligence that ordinary professionals in that field commonly possess and exercise. *See Averitt v. PriceWaterhouseCoopers, L.L.P.*, 89 S.W.3d 330, 334 (Tex. App.—Fort Worth 2002, no pet.). Indeed, Odem recognizes this in his brief when he states that to show negligence in this case, he was required to prove Deloitte & Touche "failed to do that which an accountant of ordinary prudence would have done under the same or similar circumstances or did that which an accountant of ordinary prudence would not have done under the same or similar circumstances."

The question of an auditor's or accountant's duty to third-parties who are not in privity with them was recently answered by the Texas Supreme Court in *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010). In *Grant Thornton*, the supreme court reaffirmed this state's adherence to section 552 of the Restatement (Second) of Torts, which provides that a cause of action is available only when the professional at issue–accountant, auditor, or attorney–provides information to a known party for a known purpose. *Id.* at 920. As noted by the court, section 552 defines a "known party" as one who falls in a limited class of potential claimants "'for whose benefit and guidance [one] intends to supply the information or knows that the recipient intends to supply it.'" *Id.* (quoting *McCamish, Martin, Brown &*

*Loeffler v. F.E. Appling Interests.*, 991 S.W.2d 787, 791 (Tex. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 552(2)(a) (1965)).

So, was Odem a "known party" within the parameters of section 552 such that Deloitte & Touche owed a duty to him based on its professional engagement with SAWS? We hold he was not. By the terms of the agreement between Deloitte & Touche and SAWS, Deloitte & Touche was conducting a QAR of the internal audit department for use by SAWS–for SAWS to determine the efficacy of the department. The QAR was not being supplied to Odem, as an individual, for his benefit and guidance. We therefore hold, as a matter of law, that Deloitte & Touche owed no duty to Odem, and the trial court correctly granted summary judgment on the negligence claim.

Odem cites numerous professional standards he claims created a duty by Deloitte & Touche. However, Odem did not raise these standards in response to Deloitte & Touche's motion for summary judgment. We recognize Odem cited numerous professional standards in his response, but they were not cited with regard to his negligence cause of action, and he did not provide any summary judgment evidence to raise a fact issue as to their applicability to any duty owed by Deloitte & Touche to him.

With regard to gross negligence, it is axiomatic that without a successful negligence claim in the first instance there can be no claim for gross negligence. *See Sanders v. Herold*, 217 S.W.3d 11, 20 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that although gross negligence refers to different character of conduct, one's conduct cannot be grossly negligent without being negligent); *Muniz v. State Farm Lloyds*, 974 S.W.2d 229, 237 (Tex. App.—San Antonio 1998, no pet.) (holding that if party is not liable for negligence, it cannot be liable for

gross negligence).   Accordingly, the trial court did not err in granting summary judgment in favor of Deloitte & Touche on Odem's gross negligence claim.

### *Malicious Harm*

In his second issue, Odem argues the trial court erred in granting summary judgment in favor of Deloitte & Touche because he raised a fact issue on whether Deloitte & Touche "maliciously harmed" him.   We are, admittedly, at a loss with regard to this issue.   Odem has cited no authority for his assertion that a cause of action for "malice" or "malicious harm" exists at law or equity, and we have found none.   Additionally, we have reviewed Odem's live pleading, the third amended petition, and can find no allegation of "malice," except with regard to "actual malice" associated with his defamation claim.   We therefore overrule this issue.

### *Libel*

Odem next complains the trial court erred in granting summary judgment on his libel claim.   To establish a cause of action for defamation, a plaintiff must prove: (1) the defendant published a factual statement, (2) that was capable of defamatory meaning, (3) concerning the plaintiff, (4) while acting with either negligence, if the plaintiff is a private individual, or actual malice, if the plaintiff is a public figure or a public official, concerning the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 481 (Tex. App.—Dallas 2008, no pet.).   Deloitte & Touche moved for summary judgment on several grounds.   In one of its grounds, Deloitte & Touche argued there was no evidence the recipients of the QAR, which was Odem's basis for his libel action, understood it to be defamatory, thereby negating the required element of publication.

To constitute actionable defamation, the alleged defamatory statement must be communicated so that it is understood by a third party in a defamatory sense, and there must be

evidence that at least one recipient of the alleged defamatory communication understood the words as defamatory. *Rodriguez v. Printone Color Corp.*, 982 S.W.2d 69, 73 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Marshall v. Mahaffey*, 974 S.W.2d 942, 949 (Tex. App.—Beaumont 1998, pet. denied); *Diesel Injection Sales & Servs., Inc. v. Renfro*, 656 S.W.2d 568, 573 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). When there is no evidence that at least one person understood the words as defamatory, the required element of publication is absent. *AccuBanc Mortg. Corp. v. Drummonds*, 938 S.W.2d 135, 147 (Tex. App.—Fort Worth 1996, writ denied). As stated by the court in *Drummonds*:

> Defamatory statements are "published" if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand.

*Id.*; *see Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 868 (5th Cir.), *cert. denied*, 502 U.S. 866 (1991).

We have reviewed Odem's response to Deloitte & Touche's no evidence motion for summary judgment on this issue, and we find he provided no evidence that any person who received the QAR understood it to be defamatory. Once Deloitte & Touche asserted there was no evidence as to the publication element of Odem's libel cause of action, the burden shifted to Odem to present more than a scintilla of probative evidence to raise a genuine issue of material fact on this challenged element. *See* TEX. R. CIV. P. 166a(i); *Wal-Mart*, 92 S.W.3d at 506. Because he failed to provide even a scintilla of probative evidence that any recipient of the QAR understood it to have a defamatory import, the trial court did not err in granting Deloitte & Touche's motion for summary judgment on the libel claim.

*Tortious Interference with Contract*

In his fourth issue, Odem challenged the summary judgment granted in favor of Deloitte & Touche on his claim for tortious interference with contract. Odem argues he raised a fact issue as to whether Deloitte & Touche tortiously interfered with his employment contract with SAWS.

A plaintiff prevails in a cause of action for tortious interference if he can prove: (1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) interference that proximately caused damage to the plaintiff, and (4) actual damage or loss by the plaintiff. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998); *Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 131 (Tex. App.—San Antonio 1999, no pet.) (citing *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 281, 282 (Tex. 1996)). As one of its grounds for summary judgment, Deloitte & Touche asserted it was entitled to summary judgment on Odem's claim for tortious interference with contract because Odem did not have an employment contract with SAWS. In response, Odem argued, as he does here, Texas recognizes a claim for interference with an "at-will relationship." In other words, Odem contends no contract is necessary for him to prevail on a tortious interference with contract claim. In support of his argument, Odem relies upon *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660 (Tex. 1990), *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989), and *Knox v. Taylor*, 992 S.W.2d 40 (Tex. App.—Houston [14th Dist.] 1999, no pet.). These cases, however, do not support Odem's argument that an existing contract is unnecessary to support a tortious interference with contract claim. Rather, these cases stand for the proposition that a party can maintain a tortious interference with contract claim even if the contract in question is terminable at will. *See Juliette Fowler Homes*, 793 S.W.2d at 666; *Sterner*, 767 S.W.2d at 689; *Knox*, 992 S.W.2d at 57-58. As articulated by the supreme court in *Sterner*, even if a contract is terminable

at will, until it is terminated, the contract is valid and subsisting, and if a third party tortiously interferes with it, a cause of action for tortious interference with contract will lie. *Sterner*, 767 S.W.2d at 689; *see Juliette Fowler Homes*, 793 S.W.2d at 666; *see Knox*, 992 S.W.2d at 57-58. In other words, Texas simply recognizes that even though a contract can be terminated at any time, third parties may not tortiously interfere with it while it is in existence. *See id.*

It is undisputed that Odem did not have a contract with SAWS, not even a terminable-at-will contract so as to render *Sterner* and its progeny applicable. Deloitte & Touche presented summary judgment evidence of the absence of a contract between Odem and SAWS, which established the absence of a contract as a matter of law. Specifically, Deloitte & Touche submitted the SAWS Employee Policy Manual provision, which states (1) all SAWS employees are employees-at-will, (2) the manual does not establish any employment contract, i.e., "policy manual is not intended to create a de facto contract of employment[,]" and (3) no agreement or promise relating to an employee's employment is binding on SAWS unless it is in writing and signed by the CEO. Odem did not present any evidence to counter the evidence submitted by Deloitte & Touche, and in fact concedes, he had no employment contract with SAWS. In the absence of some type of contract between Odem and SAWS, Odem cannot maintain his claim for tortious interference with contract. The trial court therefore did not err in granting summary judgment in favor of Deloitte & Touche on this claim.

### *Conspiracy*

Finally, Odem contends the trial court erred in granting summary judgment on his claim for conspiracy. Odem alleged, in essence, Deloitte & Touche conspired with SAWS to violate Odem's civil rights, and that Deloitte & Touche did so by producing a one-sided report that allowed SAWS to take action that ultimately resulted in Odem's loss of employment. Deloitte &

Touche moved for summary judgment on Odem's conspiracy claim pursuant to rule 166a(i), asserting there was no evidence as to any element of this claim. *See* TEX. R. CIV. P. 166a(i).

A civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). The essential elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) proximately resulting damages. *Tri*, 162 S.W.3d at 556; *Massey*, 652 S.W.2d at 934.

Deloitte & Touche moved for summary judgment asserting, among other things, there was no evidence of a meeting of the minds between Deloitte & Touche and SAWS to perform any unlawful act. Because Deloitte & Touche properly moved for no evidence summary judgment by specifically asserting there was no evidence of the "meeting of the minds" element, the burden shifted to Odem to present more than a scintilla of probative evidence to raise a genuine issue of material fact on that element. *See* TEX. R. CIV. P. 166a(i); *Wal-Mart*, 92 S.W.3d at 506. In an effort to meet his burden, Odem referred to "emails [sic] that went back and forth to develop the report in a light most favorable to SAWS." Odem attached as evidence to his motion for summary judgment two e-mails. The first e-mail document contains communications from Odem to Schwerdtfeger, from Schwerdtfeger to a SAWS representative, Doug Evanson, and Evanson's response to Schwerdtfeger. In those communications, Odem asked Schwerdtfeger to call him because he would like to discuss changes to Deloitte & Touche's report that had not previously been discussed. He mentioned potential erroneous information that may have been received by Deloitte & Touche. In response, Schwerdtfeger contacted

Evanson with SAWS, and told him Deloitte & Touche would prefer if Odem "work directly through SAWS and that SAWS let us know if there is something else required of us with respect to this report and Mr. Odem's comments." Evanson responded ten days later, stating he "will attempt to check this weekend for your e-mail, but if I do not receive, can you please forward directly to Dave next week."

The second e-mail is from Schwerdtfeger to John Morgan–both Deloitte & Touche representatives who worked on the SAWS report. In that e-mail, Schwerdtfeger advised Morgan the report was reviewed with Odem and Odem took exception to some portions of the report, indicating the problems found by Deloitte & Touche with his department were not "his fault and that everyone in mgt and bard has lied to us because they are trying to get rid of him." Schwerdtfeger noted Odem felt his department had added value to SAWS, but no one else in management felt the same way, and that Deloitte & Touche's independent evaluation found the internal audit department was not providing the value it should. She expressed concern for Odem, but concluded he does not understand the purpose of an internal audit department. Schwerdtfeger stated that although Odem never had any problem with SAWS management in the past, SAWS had undergone significant change in its board and leadership, specifically a new CEO and an Audit Committee. It was new management that requested the outside scrutiny by Deloitte & Touche because management had "heard from others and was beginning to observe for themselves that IA was dysfunctional but they didn't want to pull the trigger until a formal review was done." Schwerdtfeger then opined that SAWS was likely to make a change with regard to the internal audit department, but the situation with Odem was complicated because of his lawsuit against SAWS. Finally, she stated she was open to a response from Odem, but noted that any response could be "very negative," and SAWS would then be entitled to reply to

Odem's response. Schwerdtfeger asked Morgan if Deloitte & Touche really wanted to get into that, and perhaps Deloitte & Touche should just let Odem and SAWS "duke it out internally." She advised that whatever Deloitte & Touche does, it should be conservative given Odem's "record of filing lawsuits and complaints." This e-mail is dated November 21, 2006, more than a month before the final report issued.

Having reviewed these e-mails, which are the only summary judgment evidence provided by Odem in response to Deloitte & Touche's allegation that there was no evidence of any meeting of the minds between Deloitte & Touche and SAWS to do an unlawful act, we agree with Deloitte & Touche there is nothing in the e-mails to show a meeting of the minds between Deloitte & Touche and SAWS to violate Odem's civil rights or otherwise harm Odem. In sum, these e-mails merely establish Deloitte & Touche was aware of the problems Odem was having with SAWS, and was seeking to stay out of the fray in an attempt to avoid what ultimately happened–a lawsuit against Deloitte & Touche by Odem. There is not a scintilla of evidence, circumstantial or direct, within these e-mails to show an agreement between Deloitte & Touche and SAWS to take any unlawful action. Accordingly, because Odem failed to present even a scintilla of evidence to establish at least one element of his civil conspiracy claim, we hold the trial court did not err in granting summary judgment in favor of Deloitte & Touche on the conspiracy claim. *See id.*

## CONCLUSION

Based on the foregoing discussion and analysis, we overrule all of Odem's issues. Having overruled Odem's issues, we affirm the summary judgment in favor of Deloitte & Touche.

Marialyn Barnard, Justice