**Affirmed and Memorandum Opinion filed October 4, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

_____

## NO. 14-11-00445-CV
_____

**KRISTOFER THOMAS KASTNER, Appellant**

**V.**

**THE KROGER CO., ANN POTTER AND MELINDA COOMBS, Appellees**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-45365**

---

## MEMORANDUM OPINION

This appeal is brought by Kristofer Thomas Kastner, a vexatious litigant already familiar to many courts around the state. *See Kastner v. Martin & Drought, P.C.*, No. 04-09-00565-CV, 2011 WL 2893040, at *1 (Tex. App.—San Antonio July 20, 2011, pet. denied) (mem. op.) (affirming order declaring Kastner a vexatious litigant); *see also Kastner v. Tex. Bd. of Law Examiners*, Nos. 03-10-00355-CV & 03-10-00462-CV, 2011 WL 3659146, at *1 n.2 (Tex. App.—Austin Aug. 18, 2011, no pet.) (mem. op.) (listing

more than a dozen other cases involving Kastner in state and federal court). Appearing pro se, Kastner challenges a summary judgment granted in favor of the defendants below, the Kroger Co., Ann Potter, and Melinda Coombs (collectively "Kroger"). We affirm the trial court's judgment.

## BACKGROUND

Kastner appeared in court on July 31, 2007 to answer charges on a traffic citation. During the course of his appearance, the traffic court found that a warrant had been issued for his arrest, based on an earlier charge that Kastner had allegedly passed a bad check. Kastner was handcuffed and transported to the Harris County Jail, where he was strip searched and forced to stay overnight. The charges against him were ultimately dismissed after authorities learned the following set of facts.

On or about November 26, 2006, an unknown individual allegedly stole Kastner's wallet, including his personal identification, cash, credit cards, and checks. Kastner promptly reported the theft to police, but he failed to notify his bank that a stop payment order should be placed on his account. On the same day as the theft, the unknown individual allegedly wrote a check to a neighborhood Kroger grocery. The check was for a modest amount barely exceeding sixteen dollars. It was signed in Kastner's name, with his driver's license number appearing in the upper margin. Though approved by a Kroger cashier, the check was eventually returned for insufficient funds.

Over the next few months, Kroger attempted to contact Kastner by regular mail, certified mail, and telephone. All attempts proved unsuccessful however. Kastner's phone number had been disconnected, and the certified letter was returned as undeliverable. It was later discovered that Kroger had sent the letter to Kastner's correct street address, but the zip code was wrong and a digit had been omitted mistakenly from Kastner's apartment number.

2

On June 7, 2007, after no response was received from Kastner, Kroger referred the incident to local authorities. Melinda Coombs, a Kroger employee tasked with handling bad checks, executed a probable cause affidavit on the company's behalf. In her affidavit, Coombs attested that she had "good reason to believe" that Kastner was the person who passed the bad check. She attested further that written notice was sent to Kastner and that Kastner had not yet paid for the check. Coombs's affidavit was filed in a local Justice of the Peace Court, along with other affidavits similarly worded.

Following his arrest, Kastner explained the circumstances of the alleged theft to prosecutors. For demonstrative purposes, Kastner was asked to sign his name several times on a sheet of a paper. His signature did not compare to the handwriting on the bad check. The prosecutor later dismissed the charges for insufficient evidence.

On July 29, 2008, Kastner filed an original petition against the Kroger Co. and two other named defendants: Ann Potter, a manager at the grocery; and Coombs, who filed the affidavits. In his live pleading, Kastner asserted causes of action for negligence, libel per se, and false imprisonment. Kastner's negligence claim proceeded on theories of negligent training and supervision. Specifically, Kastner alleged that Kroger and its employees breached a duty of care by failing to check the identification of the person who signed the check in his name. Kastner also alleged that Kroger was negligent in failing to provide lawful notice of the bad check. In his claim for libel per se, Kastner alleged that Kroger submitted false affidavits to law enforcement, which misidentified him as the check writer and which misstated that he received notice of the bad check. Finally, Kastner alleged that Kroger falsely imprisoned him by directing his arrest without his consent or without authority of law. For these claims, Kastner sought actual and exemplary damages, as well as attorney's fees, despite proceeding pro se.

Kroger generally denied the allegations and moved for summary judgment on traditional and no-evidence grounds. In its traditional motion, Kroger argued that Kastner's libel claim must fail because it was barred by the statute of limitations, or

3

alternatively, because Kroger's communications were privileged under law. Kroger also argued that it was entitled to judgment on Kastner's false imprisonment claim because the arrest warrant was presumptively valid; Kroger did not direct or request the arrest; Kroger did not knowingly provide false information to authorities; and Kroger owed no duty to notify Kastner of any potential criminal proceedings. As for Kastner's negligence theories, Kroger argued that Kastner sought relief based on the same conduct and damages as that alleged under his theories for libel and false imprisonment. Kroger contended that such negligence claims were not actionable independent of Kastner's intentional torts. Finally, Kroger argued that Kastner was not entitled to attorney's fees because Kastner was neither a lawyer nor a prevailing party; no statute or contract authorized such an award; and the award was otherwise precluded by the law barring such recovery for pro se litigants. In its alternative no-evidence motion, Kroger argued that there was no evidence of a recognized duty of care that was breached; of damages caused by a false statement that was libelous per se; or of a willful detention executed without the authority of law.

Kastner filed a lengthy response. On May 6, 2011, following a hearing, the trial court signed an order granting Kroger's motion on both traditional and no-evidence grounds. This appeal followed.

## ISSUES PRESENTED

Kastner presents the following issues for our review: whether he "presented sufficient evidence to make reasonable and fair minded people differ on the issues of liability for his causes of action"; whether he filed his libel claim within the statute of limitations; and whether the trial court "abused [its] discretion in granting summary judgment based upon theories not applicable to the case at bar." Construing his brief liberally, we understand Kastner's complaint to be a general challenge to the propriety of the trial court's summary judgment. *See Nabelek v. Bradford*, 228 S.W.3d 715, 717 (Tex.

4

App.—Houston [14th Dist.] 2006, pet. denied) (noting that courts liberally construe pro se filings, but still hold pro se litigants to the same standards as licensed attorneys).

## ANALYSIS

We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of his cause of action or defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). In this context, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review

5

the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller*, 168 S.W.3d at 827. We will sustain a no-evidence summary judgment when (a) there is a complete absence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

## A.    Libel

Kastner asserted a claim for libel based on statements contained in two affidavits submitted by Kroger. In those affidavits, Kroger attested that Kastner passed a check knowing that he lacked sufficient funds to pay for it. One of the affidavits indicated that Kroger verified Kastner's identification at the point of sale to ensure that he was the person writing the check. In this affidavit, Kroger further attested that written notice was sent to Kastner regarding the returned check. Kastner alleged that each of these statements was false. He contended that he did not write the check, as his true signature did not compare with that on the bad check. He also contended that Kroger did not compare his photo identification with the alleged culprit; if it had, according to Kastner, Kroger would have rejected the check because Kastner is uniquely "unmistakable looking" with bright red hair. Finally, Kastner contended that he did not receive written notice of the bad check, as demonstrated by the certified letter that was returned as undeliverable.

Kroger argued that it was entitled to summary judgment for two independent reasons: first, because Kastner's libel claim was barred by the statute of limitations; and

6

second, because any statements made to law enforcement were subject to an absolute or qualified privilege. We agree with Kroger on both theories.

## 1. Statute of Limitations

When a defendant moves for summary judgment on an affirmative defense such as the running of limitations, the defendant assumes the burden of showing as a matter of law that the suit is barred by limitations. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983) (per curiam); *see* Tex. R. Civ. P. 94. Accordingly, Kroger must prove when Kastner's cause of action accrued. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990). When a cause of action accrues is normally a question of law for the court to decide. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

Libel claims carry a one-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (West 2011). Such claims accrue on the date of the communication or publication and not on the date of the consequences or sequelae. *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 131 (Tex. App.—Houston [14th Dist.] 1994, no writ).

The affidavits in this case are dated June 13, 2007. Kastner filed his original petition more than one year later, on July 29, 2008. Barring application of the discovery rule, which Kastner has pleaded, the petition was untimely and Kroger was entitled to summary judgment.

The discovery rule is the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). Except in cases of fraud and fraudulent concealment, the discovery rule applies when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918

7

S.W.2d 453, 456 (Tex. 1996)). An injury is "inherently undiscoverable" if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996)). A plaintiff who fails to take action has not exercised reasonable diligence if his claimed injury is based on information that was readily accessible and publicly available. *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 925 (Tex. 2011).

Kastner affirmatively pleaded the discovery rule, and he argues on appeal that his cause of action did not accrue until July 31, 2007, the date of his arrest. As movant below, Kroger assumed the burden of negating application of the discovery rule. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam). For the following reasons, we conclude that Kroger satisfied its burden.

Under Texas law, a person has no duty to periodically check his criminal record for the possible filing of a criminal complaint. *See San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 98 (Tex. App.—San Antonio 2003, pet. denied) (stating that a person should not be required to monitor his record, potentially for an indefinite period, in the event that a complaint containing defamatory comments might be filed against him). However, once a complaint is filed and made publicly available, the law charges that person with constructive notice of the complaint and triggers in him the duty to exercise reasonable diligence. *See Shell Oil*, 356 S.W.3d at 925; *San Antonio Credit Union*, 115 S.W.3d at 98–99; *see also Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ("A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records.").

The affidavits in this case were filed with the Justice of the Peace Court on June 13, 2007. Information regarding the complaint was made available online and at the court. Because examination of the public records would have easily revealed this information, the affidavits were not "inherently undiscoverable" after the date of their filing. *See Shell Oil*, 356 S.W.3d at 925; *cf. Mooney*, 622 S.W.2d at 85 (fraud claim could

8

have been discovered when a will was admitted to probate); *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 758 (Tex. App.—Tyler 1997, writ denied) (malicious prosecution claim accrued when charges were dismissed and order of dismissal was made a matter of public record). Thus, even if Kastner was not actually alerted to the filing of a criminal complaint, the law charged him with constructive notice of Kroger's affidavits on June 13, 2007. Kastner, however, did not file his petition until July 29, 2008, more than thirteen months after the affidavits became public record. His libel claim is therefore untimely, and summary judgment was properly granted on the basis of the running of limitations.

### 2. Absolute or Qualified Privilege

Even if the statute of limitations did not bar Kastner's claim for libel, the trial court correctly granted summary judgment in Kroger's favor because, under the defense of privilege, Kroger's statements could not form the basis of liability.

The defense of privilege may be absolute or qualified. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987). The rule of absolute privilege provides that no communication uttered in the course of a judicial proceeding may serve as the basis of a civil action for libel or slander. *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam); *Hott v. Yarbrough*, 112 Tex. 179, 183, 245 S.W. 676, 676 (Tex. 1992). This rule applies even where the communication is done in negligence or in malice, or when made by judge, juror, party, or witness. *James*, 637 S.W.2d at 916; *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 111, 166 S.W.2d 909, 912 (1942). "The absolute privilege attaches only in situations that 'involve the administration of the functions of the branches of government.'" *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, 291 S.W.3d 448, 452 (Tex. App.—Fort Worth 2009, no pet.) (quoting *Hurlbut*, 749 S.W.2d at 768). Moreover, the rule attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions,

9

affidavits, and any of the pleadings or other papers in the case. *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994); *James*, 637 S.W.2d at 916–17.

Communications may also be subject to a qualified or conditional privilege if made before persons not sitting in a judicial or quasi-judicial capacity. *See Hurlbut*, 749 S.W.2d at 768 (holding that qualified privilege applied to communication made to assistant attorney general). A qualified privilege is defeated when the privilege is abused. *Id*. Abuse may be found when the person making the defamatory statement knows the matter to be false or does not act for the purpose of protecting the interest for which the privilege exists. *Id.* Thus, the privilege attaches only if the communication is made in good faith and without actual malice. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).

Some courts of appeals have concluded that the filing of a criminal complaint is not absolutely privileged because, at the point of filing, no judicial proceedings have been proposed and no investigating body has discovered sufficient information to proceed with a criminal prosecution. *See, e.g.*, *Clark v. Jenkins*, 248 S.W.3d 418, 432 (Tex. App.—Amarillo 2008, pet. denied); *San Antonio Credit Union*, 115 S.W.3d at 99. Even under these authorities, the communication in this case would still be entitled, at a minimum, to the qualified privilege. The statements contained in the affidavits were clearly made in good faith; both Kroger and the local authorities have a legitimate interest in discovering, investigating, and prosecuting persons who issue bad checks. Coombs attested in her affidavit that she had a "good reason to believe" that Kastner was the person who wrote the check. In additional affidavits included among the summary judgment evidence, Coombs attested that "[a]t all times in this process [she] acted in good faith and without malice toward Mr. Kastner." The Kroger cashier who accepted the cash made similar affidavit testimony. Kastner has not cited to any summary judgment evidence controverting these affidavits. Accordingly, the trial court was justified by entering summary judgment in Kroger's favor. *See* Tex. R. Civ. P. 166a(c).

## B. False Imprisonment

Kastner also claimed that Kroger was liable to him for damages stemming from his false imprisonment. To recover on his claim for false imprisonment, Kastner was required to prove each of the following: (1) that he was willfully detained; (2) that the detention was made without his consent; and (3) that the detention was made without the authority of law. *See Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (per curiam); *Raiford v. May Dep't Stores Co.*, 2 S.W.3d 527, 533 (Tex. App.—Houston [14th Dist.] 1999, no pet.). We hold that Kroger conclusively negated elements one and three as a matter of law.

### 1. Willful Detention

Liability for false imprisonment extends beyond those who participate in detaining the complaining party to those who request or direct the detention. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002). Thus, proof of a willful detention may be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention. *Id.* This causation standard is sometimes known as the "instigation" of the false imprisonment. *Id.*

To prove instigation when the detention results from an allegedly unlawful arrest, the plaintiff must show that the defendant clearly directed or requested the arrest. *Id.* "A private citizen who merely reports a crime and identifies the suspect to law enforcement authorities has not requested or directed the suspect's arrest and will not be liable for instigating a subsequent false imprisonment." *Id.* Citizens retain a legal right to report criminal misconduct to authorities, and from the mere exercise of this right the law will not permit the inference to be drawn that a person has "requested or directed" the arrest, even though but for the exercise of this right the arrest never would have been made. *Id.* This is true even when the reporting party mistakenly identifies the wrong person. *Id.* Moreover, it is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so

11

long as he leaves to the authorities the decision as to what will be done about any arrest, without persuading or influencing them. *Id.* at 507–08.

Kroger's affidavits merely alleged the commission of a crime and provided information identifying Kastner as a suspect. There was no explicit direction or request that a warrant issue for Kastner's arrest.

Kastner argues that Kroger may still be held liable because Kroger knowingly and intentionally provided false information in its affidavits. *See id.* at 509 ("[A] defendant may be liable for instigating an unlawful arrest if he knowingly provides false information to law enforcement authorities resulting in the arrest."). Kastner cites to probative evidence which might support a finding that he neither wrote the check nor received notice that the check was returned for insufficient funds. But this evidence shows only that Kroger's affidavit testimony was inaccurate, not that it was imparted with knowledge of its falsity. The summary judgment evidence demonstrates instead that Kroger had no such knowledge or intent. In the probable cause affidavit, Coombs attested that she had "good reason to believe" in the truth of her allegations. And, as mentioned before, Coombs attested in other affidavits that "at all times" she acted with good faith and without actual malice towards Kastner. Because this affidavit testimony is clear, direct, and uncontroverted, the trial court was justified in accepting it as conclusive as a matter of law. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). Without evidence of a willful detention, Kroger was entitled to summary judgment on Kastner's false imprisonment claim.

### 2. Without Authority of Law

Assuming there was evidence of a willful detention, summary judgment was appropriate on the alternative basis that Kastner was detained with the authority of law.

It is a complete defense to a claim for false imprisonment that the arrest or detention was done by virtue of process, legally sufficient in form, and duly issued by a

court or official having jurisdiction to issue it. *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 248 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.). We presume that the warrant was valid and issued by competent authority on a sufficient complaint. *Id.* The burden falls to the plaintiff in a false imprisonment case to prove by a preponderance of the evidence that his detention was not under valid process. *Id.*

Kroger argued in its motion for summary judgment that Kastner's arrest warrant was issued under valid legal process. Kastner failed to assert defective process in his response, and he makes no such argument on appeal. Therefore, the presumption holds that legal process was valid and that Kastner's arrest was executed with the authority of law. *See id.* at 247–48. Kroger was accordingly entitled to summary judgment on this false imprisonment claim.

## C. Negligence

Kastner also sought to recover on the alleged negligence of Kroger and its employees. In his petition, Kastner alleged that Kroger was negligent by failing to verify the identification of the person who wrote the check, by failing to provide notice of the returned check, by failing to provide accurate information about these matters to law enforcement, and by failing to train and supervise its employees with respect to the execution of these tasks.

In its motion for summary judgment, Kroger argued that these claims were based on the same conduct and damages as Kastner's claims for libel and false imprisonment. Therefore, Kroger argued that Kastner could not maintain an action in negligence independent of his intentional torts. Kroger also argued that there was no evidence of a duty with respect to each of Kastner's alleged negligence claims.

### 1. Verifying Identification

Kastner argues that Kroger owed "a duty to ensure hot checks are not written at Kroger stores by people who forge checks," and that this duty was breached when Kroger

13

failed to realize that Kastner was not the person who wrote the bad check. Kastner has not provided any authority supporting a duty of ordinary care applicable in this context. Although Kroger has implemented measures to prevent the passing of forged checks, Texas law does not create a negligence duty based on a company's internal procedures where no duty would otherwise exist. *Entex v. Gonzalez*, 94 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also Rodriguez*, 92 S.W.3d at 510–11 (rejecting theory that negligent rather than willful conduct could support claim of false imprisonment against retailer who inaccurately reported writing of a bad check).

Even if a duty of ordinary care were owed, the summary judgment evidence demonstrates that Kroger did not breach it. Coombs's deposition testimony establishes that while verifying information is key to preventing the issuance of bad checks, the most important safeguard is recording the driver's license number of the person purported to be drawing the check. The evidence is undisputed that the Kroger cashier who accepted the bad check correctly denoted Kastner's driver's license number.

Kastner still insists that Kroger could be found negligent because it did not recognize the disparate signatures. Kastner cites to no authority for this proposition. He observes instead that his criminal charges were dismissed when authorities found that the signatures did not match. But the charges were dismissed because of "insufficient evidence," not because Kastner was proved to be innocent. A dismissal is no proof that a person was unjustifiably subjected to criminal proceedings. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 794 (Tex. 2006).

Kastner also observes that charges were dismissed in a similar case after another merchant received a bad check, purportedly from the same person alleged to have stolen Kastner's wallet. In an affidavit, Kastner attested to the following:

> The bad check case was dismissed against me after I explained the story about the wallet theft. The prosecutor asked me to write my name down . . . and made the determination the hand writing was not mine. It is

14

> my opinion the merchant, the court employees and judge all should have been capable of making the same determination with equal ease.

This affidavit testimony does not constitute competent summary judgment proof because it is conclusory and based on opinion. *See Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (per curiam); *Duncan v. Lisenby*, 912 S.W.2d 857, 859 (Tex. App.—Houston [14th Dist.] 1995, no writ). Moreover, Potter's deposition testimony establishes that Kroger employees are not handwriting analysts, nor would they be at fault for failing to detect differences in signatures. As Potter explained, individual handwriting can change over time, and for that reason, she rejected the notion that better training would have prevented an employee from missing the signature differences. Kastner has not pointed to any evidence controverting this testimony.

Finally, Kastner argues that Kroger was negligent by failing to compare his photo identification with the person writing the check. Kastner contends this was an "obvious mistake" because he has bright red hair and, apparently, no one else could possibly resemble him. His assertion is self-serving, conclusory, and completely unsupported by authority.

### 2. Statutory Notice

Kastner argues next that Kroger owed a duty under section 32.41 of the Texas Penal Code to provide him with notice of a returned check and an opportunity to pay it. Citing the certified letter that was returned as undeliverable, Kastner contends that Kroger breached this duty because it referred the incident to authorities without ever achieving notice. We perceive no applicable duty under the cited statute.

Section 32.41 provides that "[a] person commits an offense if he issues or passes a check . . . for the payment of money knowing that the issuer does not have sufficient funds in or on deposit with the bank." Tex. Penal Code Ann. § 32.41(a) (West 2008). In a criminal prosecution, the state may prove knowledge through direct evidence. *Id.* § 32.41(b). Knowledge is presumed, however, if the person had no account with the bank

15

at the time the check was issued, or if "payment was refused by the bank or other drawee for lack of funds or insufficient funds on presentation within 30 days after issue and the issuer failed to pay the holder in full within 10 days after receiving notice of that refusal." *Id.* To satisfy the notice requirement, the statute provides that written notice may be sent by first class or certified mail, at the address shown on the check, with a demand for payment within ten days of receipt. *Id.* § 32.41(c).

The statute is clear and unambiguous. It defines a criminal offense, provides an evidentiary burden, and prescribes a method for satisfying that burden by presumption. Nowhere does the statute impose on Kroger or any third party a duty to notify a person of a returned check or of possible criminal charges. Even if Kroger somehow owed a duty, penal code violations do not give rise to private causes of action. *See Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001); *LeBlanc v. Lange*, 365 S.W.3d 70, 87 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

There was no evidence that Kroger breached a recognized duty of care. Kroger was therefore entitled to summary judgment on Kastner's negligence claims.

**D.    Attorney's Fees**

Kastner finally contends that he is entitled to attorney's fees based on equity. We disagree. Attorney's fees may not be awarded absent a statute or contract allowing for their recovery. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). Kastner has not cited to an applicable statute or to evidence of a contract between the parties. Moreover, Kastner did not prevail below, and because he is a pro se litigant, he never assumed an agency relationship or incurred any attorney's fees. We decline to hold that Kastner, who is not a licensed attorney, was entitled to fees for acting on his own behalf. *See Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 299–300 (Tex. 2011) (holding that pro se litigant could not recover attorney's fees under Texas Public Information Act); *Beasley v. Peters*, 870 S.W.2d 191, 197 (Tex. App.—Amarillo 1994, no writ) (holding that attorney appearing

pro se should not recover a sanction award consisting of attorney's fees under Rule 215.2(b)(8)).

## CONCLUSION

The judgment of the trial court is affirmed.


/s/    Adele Hedges
        Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

17